J-S20018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSIE ANN HEPPENSTALL | : | |
| | : | |
| Appellant | : | No. 1128 WDA 2018 |

Appeal from the Judgment of Sentence Dated August 1, 2018
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000016-2018

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:  **FILED JUNE 26, 2019**

Josie Ann Heppenstall appeals from the judgment of sentence entered following her jury-trial convictions for firearms not to be carried without a license and fleeing or attempting to elude a police officer while endangering a law enforcement officer or member of the general public by engaging in a high-speed chase.[1] She argues that the court erred in denying her motion for acquittal, in admitting evidence, and in providing an inadequate cautionary instruction. She further contends that her conviction cannot stand because the jury returned inconsistent verdicts. We affirm.

Heppenstall was arrested following a high-speed chase that occurred around 8:30 p.m. on December 22, 2017, and charged with fleeing or attempting to elude a police officer while engaging in a high speed chase,

_____

[1] 18 Pa.C.S.A. § 6106(a)(2) and 75 Pa.C.S.A. § 3733(a), (a.2)(2)(iii), respectively.

firearms not to be carried without a license, persons not to possess firearms, 18 Pa.C.S.A. § 6105(a)(1), possession of a small amount of marijuana, 35 P.S. § 780-113(a)(31), and possession of drug paraphernalia, *id.* at 780-113(a)(32).

Before the start of trial, the Commonwealth *nolle prossed* the possession of a small amount of marijuana charge because the substance had not been tested. N.T., 5/10/18, at 4. The trial court then also dismissed the possession of drug paraphernalia charge. *Id.* at 6-7. The trial court instructed the parties "to not mention the search of [Heppenstall's] purse," which was where the marijuana was discovered, "during the testimony in chief." *Id.* at 8.

The case proceeded to a jury trial. During opening statements, defense counsel stated the defense would "not offer any evidence to disprove that [Heppenstall] sped away from the police," and stated that Heppenstall "eluded the police." *Id.* at 25-26.

The Commonwealth then presented the testimony of Officer Zack Howard, who testified that he was waiting at a red light when he heard a car moving at a high rate of speed. *Id.* at 28. He then observed the car go through an intersection at a high rate of speed. *Id.* Officer Howard activated his emergency overhead lights and siren and attempted to initiate a traffic stop. *Id.* Officer Howard followed the vehicle, which continued at a high rate of speed. *Id.* at 29. In an attempt to stop the vehicle, Officer Howard was traveling at maximum of 70 miles per hour on a road that had a 25-mile-per-hour speed limit. *Id.* He observed the vehicle's headlights go off for about five

seconds, and then reactivate. *Id.* Officer Howard finally caught the vehicle after the vehicle crashed, and landed in a backyard, 100 feet from the roadway. *Id.* at 31.

Officer Howard testified that Heppenstall was the driver and sole occupant of the car, which was titled and registered in Heppenstall's name. *Id.* at 38, 40. Officer Howard discovered a Hi-Point, 45-caliber pistol on the floor under Heppenstall's feet. *Id.* at 42. Heppenstall did not have a license to carry the firearm. *Id.* at 45. Officer Howard testified there was documentation that Heppenstall's husband, Samuel Heppenstall ("Samuel"), had purchased the firearm. *Id.* at 47. Officer Howard testified that Heppenstall told him the firearm belonged to her husband. She informed Officer Howard that her husband's tactical vest also was in the car and claimed that she did not stop because her brakes were not working. *Id.* at 48.

During Officer Howard's testimony, the Commonwealth played for the jury a video from the dashboard camera of the police car. The trial court asked Heppenstall whether she had an objection, and counsel stated, "[n]o objection if the Court feels it's appropriate and necessary." *Id.* at 31. Following the video, the Commonwealth moved for the admission of photographs showing the curve just prior to where the vehicle crashed. *Id.* at 36. Heppenstall objected, noting the photographs were cumulative of the video. *Id.* The trial court overruled the objection and permitted the admission of the photographs. *Id.*

On cross-examination of Officer Howard, the following occurred:

Q: And were you able to determine whether the tactical vest also belonged to –

[Assistant District Attorney ("ADA")]: I'll object, Your Honor to the relevance of the vest, it's not been –

[Defense Counsel]: It's certainly relevant because –

The Court: Overrule. Overrule, I understand, but I don't think –

[ADA]: Well, it's not legal to have a tactical vest in your vehicle.

The Court: No, no, overrule, and I don't want to say why. Go ahead.

*Id.* at 52-53. Further, Officer Howard responded "[n]o" when asked, "Other than the fact that the gun was at or near her feet at the time you noticed it, is there any other evidence that you have that she had the intent to control or even knew this gun was in the car?" *Id.* at 58.

The Commonwealth next called a certified mechanic, Tony Staggers, to testify as an expert. Heppenstall objected, stating his testimony was cumulative because "[w]e've already seen pictures, we've seen the dashboard, I've already indicated her guilt as to this." *Id.* at 61. The trial court overruled the objection and permitted his testimony.

Staggers testimony included the following:

Q. In late December of last year, what inspection work did you do on a Ford Focus belonging to a Ms. Heppenstall?

A. Yes, I was asked to look the vehicle over because supposedly the brakes did not work and accelerator supposedly stopped and –

[Defense counsel]: Objection, I don't think there was any testimony –

> The Court: That's fine, you're right. So sustain the objection and forget about the last. It was just why he looked at it. So disregard the last statement. Go ahead, Mr. Lock.

*Id.* at 63.

Staggers then testified that the brakes were "in real good working order." *Id.* When the ADA asked Staggers about the condition of the throttle and accelerator, defense counsel objected, noting "there's no[] testimony with respect to the accelerator not working, I feel it's not relevant." *Id.* at 63-64. The trial court overruled the objection, reasoning, "I think the mechanical condition is relevant and not particularly prejudicial." *Id.* at 64. Staggers testified that the throttle and accelerator were in working order. *Id.*

The Commonwealth rested and Heppenstall moved to dismiss the firearm charges, arguing the Commonwealth did not establish Heppenstall had dominion over or the ability to control the firearm, or that she was aware the firearm was in the car. *Id.* at 65-66. The trial court denied the motion, finding the issue was for the trier of fact. *Id.* at 66.

Heppenstall's husband, Samuel, testified for the defense. Samuel is employed as a security guard and a member of the US Army National Guard. *Id.* at 70. He testified that he purchased the gun found in the vehicle and usually carried the gun on his person for protection. *Id.* at 70-71, 74.[2] According to his testimony, on December 22, 2017, he and Heppenstall had only one operational vehicle. *Id.* at 76. He testified that he had been using

_____

[2] Among the admitted pictures of the gun was a picture of Samuel in the tactical vest with the firearm. N.T., 5/10/18, at 75.

the vehicle to run errands during the day, and had kept his gun under the front seat during the errands. *Id.* at 76. That night, he worked security at a school sporting event. *Id.* He drove the vehicle to the event, with Heppenstall as a passenger. *Id.* at 77. Heppenstall was to pick him up after the event. *Id.* at 77-78. He could not bring his gun to his security job that evening and, although he usually locked the gun in the trunk when he could not take it with him, on that day, he was "running a little bit late for work [and] was in a rush." *Id.* at 78. He said that he did not tell Heppenstall it was under the seat and she did not acknowledge that she knew it was there. *Id.*

On cross-examination, Samuel agreed that the gun was unloaded, he carried an unloaded gun for protection, and the gun had an unloaded magazine in it. *Id.* at 80. He stated he carried a loaded magazine in his pocket. *Id.*

The parties stipulated that Heppenstall had a felony conviction that prohibited her from possessing a firearm. *Id.* at 20.

During closings, the ADA stated:

> First, why a man, [Samuel], familiar and trained with firearms, would carry an unloaded gun in his wife's vehicle for protection. A gun doesn't do much good unless it has bullets in it. And secondly, it doesn't make sense why Josie Heppenstall, a mother of two, would lead a police officer on a high-speed chase which was over almost two miles which resulted in her leaving the scene in an ambulance. And, ladies and gentlemen, the explanation for that first issue is that Mr. Heppenstall didn't put the gun in that vehicle that day. He wasn't going to carry an unloaded gun for personal protection. *And as far as the second issue, why Ms. Heppenstall, mother of two, would risk life and limb leading*

> *a police officer on a high speed chase is that she did know that gun was in that vehicle and she knew as a person not to possess a firearm due to that prior felony conviction, she really, really did not want to get caught with that gun in that car by Officer Howard*.

*Id.* at 89 (emphasis added).

After closings, defense counsel requested a sidebar conference, at which counsel stated that the ADA's closing left the jury with "the incorrect impression that the only reason she would possibly be leaving the scene was because she had a gun that she knew about. When in reality, there was marijuana in that car which is just as plausible [a] reason." *Id.* at 91. Counsel stated he did not mention the marijuana because the court told the parties not to reference it. *Id.* Counsel requested a cautionary instruction. *Id.* at 92. Following the sidebar, the trial court issued the following cautionary instruction:

> I don't recall whether or not when you were here for jury selection, we talked about an allegation that there was marijuana in the car. There [were] rulings by the Court, which had nothing really to do with the parties, where an allegation of marijuana was dismissed. So the only reason we bring that up now is because, again – and I would stress that the arguments of counsel are simply that - but we bring that up because of the circumstance that [the ADA] asks you to consider why it was that she was fleeing. And [defense counsel] has said yes, she was fleeing, referred to her as a knucklehead or however that might be. So just so that you know, that piece of evidence, let's call it that, is that there was originally that charge. That was dismissed by the Court and so I guess that is we give you that to essentially give you a complete picture.

*Id.* at 94-95. Defense counsel said the cautionary instruction was "fine," *id.* at 95, and did not object.

- 7 -

The jury found Heppenstall guilty of firearms not to be carried without a license and fleeing or attempting to elude a police officer, but not guilty of possession of firearm by prohibited person.[3] The trial court sentenced Heppenstall to two concurrent terms of ten to 23 months' incarceration. Heppenstall filed a timely Notice of Appeal.

Heppenstall raises the following issues:

> I. Did the trial judge commit an abuse of discretion by permitting Tony Staggers to testify regarding the condition of the brakes and accelerator of the Ford Focus Ms. Heppenstall was driving?
>
> II. Did the trial court commit an abuse of discretion by denying [Heppenstall's] request for a cautionary instruction after the Commonwealth violated a Pre-Trial Order entered by the trial judge barring either side from mentioning [Heppenstall] was in possession of marijuana in her vehicle?
>
> III. Was the inconsistency of the jury's verdict in which they found [Heppenstall] not guilty of Count I Person Not to Possess, Manufacture, Control, Sell or Transfer Firearms, 18 Pa. C.S.A. § 6105(A)(1), but they found [Heppenstall] guilty of Firearms Not to be Carried Without a License, 18 Pa. C.S.A. § 6106(A)(2), such that it should nullify the jury's verdict as to the latter charge?
>
> IV. Did the trial court abuse its discretion in permitting the Commonwealth to show dash cam video of [Heppenstall] attempting to elude the Waynesburg Police when counsel, in his opening, conceded [Heppenstall's] guilt in this regard and objected to the use of same at trial?

---

[3] The trial court also found Heppenstall guilty of the following summary offenses: driving a vehicle at a safe speed, 75 Pa.C.S.A. § 3361; careless driving, 75 Pa.C.S.A. § 3714; turning movements and required signals, 75 Pa.C.S.A. § 3334(a); driving without lights to avoid identification, 75 Pa.C.S.A. § 3734; and reckless driving, 75 Pa.C.S.A. § 3736.

V. Did the trial court abuse its discretion in refusing to grant [Heppenstall's] Motion to Dismiss at the conclusion of the Commonwealth's case when the only evidence produced by the Commonwealth as to Heppenstall's possession of the firearm in question was its proximity to where she was sitting after her car came to a stop following its hitting an embankment?

VI. Did the trial court error in refusing to grant a directed verdict for [Heppenstall] and against the Commonwealth at the conclusion of the trial when the only competent evidence as to [Heppenstall's] ownership of the gun was its proximity to her feet after her vehicle stopped upon hitting an embankment?

VII. Did the cumulative effect of all of the errors on evidentiary rulings deprive [Heppenstall] of a fair trial?

Heppenstall's Br. at 3-4. For ease of disposition, we will address Heppenstall's claims out of order.

## I. Motion to Dismiss

Heppenstall claims the trial court erred in denying her motion to dismiss the firearm charges following the Commonwealth's case. She claims the Commonwealth failed to present sufficient evidence that she possessed the firearm. She argues the gun was not on her person, but found near her feet after a car accident and that her husband explained that he had left the gun in the car. She argues that mere presence does not establish constructive possession. She also claims that her fleeing is not evidence that she illegally possessed the firearm, as she also possessed marijuana.

A challenge to the sufficiency of the evidence at the close of the Commonwealth's case-in-chief is treated as a motion for judgment of acquittal. *See* Pa.R.Crim.P. 606(a)(1). "A motion for judgment of acquittal

challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." **Commonwealth v. Hutchinson**, 947 A.2d 800, 805 (Pa.Super. 2008) (quoting **Commonwealth v. Andrulewicz**, 911 A.2d 162, 165 (Pa.Super. 2006)).

When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt. **See Commonwealth v. Dale**, 836 A.2d 150, 152 (Pa.Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Commonwealth v. Brown**, 23 A.3d 544, 559 (Pa.Super. 2011) (*en banc*) (quoting **Hutchinson**, 947 A.2d at 805-06).

18 Pa.C.S.A. § 6106(a) prohibits any person from "carr[ying] a firearm in any vehicle. . . without a valid and lawfully issued license under this chapter[.]" 18 Pa.C.S.A. § 6106(a). To convict a defendant under this section where the firearm was found in a vehicle, the Commonwealth must establish that the weapon was a firearm, it was unlicensed, and the weapon was in the defendant's vehicle. **See id.** Further, "the Commonwealth must establish that a defendant acted 'intentionally, knowingly or recklessly' with respect to each element" of 18 Pa.C.S.A. § 6106(a). **Commonwealth v. Scott**, 176 A.3d 283, 291 (Pa.Super. 2017). The Commonwealth may prove "the defendant had

knowledge of the existence and location of the items at issue 'from examination of the totality of the circumstances surrounding the case,' such as whether the contraband was located in an area 'usually accessible only to the defendant.'" ***Commonwealth v. Hall***, 199 A.3d 954, 961 (Pa.Super. 2018) (quoting ***Commonwealth v. Thompson***, 428 A.2d 223, 224 (Pa.Super. 1981)).

The Commonwealth presented evidence that Heppenstall was the driver and sole occupant of a vehicle that led a police officer on a high-speed chase, the vehicle was registered to Heppenstall, the firearm was found at her feet, and Heppenstall was not licensed to carry a firearm. This was sufficient to support a conviction for carrying firearms without a license.

## II. Evidentiary Rulings

We review evidentiary rulings for an abuse of discretion. ***Commonwealth v. Poplawski***, 130 A.3d 697, 716 (Pa. 2015). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Id.*** (quoting ***Commonwealth v. Sherwood***, 982 A.2d 483, 495 (Pa. 2009)).

Relevant evidence is admissible unless "otherwise provided by law." ***Commonwealth v. Cook***, 952 A.2d 594, 612 (Pa. 2008) (quoting Pa.R.Evid. 402). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence [and] the fact is of

consequence in determining the action." Pa.R.Evid. 401. Further, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.Evid. 403.

The crime of fleeing or attempting to elude a police officer is defined as: "Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop." 75 Pa.C.S.A. § 3733(a). Heppenstall was charged with fleeing or attempting to elude a police officer as a felony of the third-degree, which requires proof of an additional element, here, that Heppenstall "endanger[ed] a law enforcement officer or member of the general public due to [her] engaging in a high-speed chase." *Id.* at 3733(a.2)(2)(iii).

### A. Testimony of Mechanic

Heppenstall first alleges the trial court abused its discretion by permitting Staggers to testify regarding the condition of the vehicle's brakes and accelerator.

During Staggers' testimony, the following occurred:

> [Q]: In late December of last year, what inspection work did you do on a Ford Focus belong[ing] to Ms. Heppenstall?
>
> [A]: Yes, I was asked to look the vehicle over because supposedly the brakes did not work and supposedly the accelerator stopped[.]

N.T., 5/10/18, at 63. Heppenstall objected because, although Officer Howard had testified that Heppenstall claimed the brakes were not working, he had not testified that she claimed the accelerator was not working. The trial court sustained the objection, and instructed the jury to "disregard the last statement." *Id.* Staggers then testified that the brakes, throttle, and the accelerator were operational.

The trial court did not abuse its discretion. To establish Heppenstall fled or eluded the police, the Commonwealth had to show she willfully engaged in a high-speed chase. Stagger's testimony that the vehicle's brakes and accelerator were operational was probative of Heppenstall's intent. Further, the probative value of the evidence that the accelerator was operational outweighed any unfair prejudice. The trial court sustained the objections to Stagger's answer stating someone claimed the accelerator was not working, and informed the jury to disregard the answer. Further, in his answer, Staggers never claimed that Heppenstall told him the accelerator was not working.

## B. Dashboard Camera Video and Tactical Vest

Heppenstall next argues the trial court abused its discretion when it permitted the Commonwealth to show the jury the video from the police car's dashboard camera. She claims that she conceded during her opening statement that she tried to elude Officer Howard and therefore the court erred in admitting the video. She claims the video inflamed the jury's emotions.

Heppenstall also claims that the Commonwealth incorrectly told the jurors it was illegal for Heppenstall's husband to be in possession of a tactical vest.

Heppenstall waived her objection to the admission of the video from the dashboard camera. She did not object to the admission of the evidence at trial. Pa.R.Evid. 103(a)(1); **Commonwealth. v. Thoeun Tha**, 64 A.3d 704, 713 (Pa.Super. 2013).

Even if she had not waived the issue, we would conclude it lacked merit. The trial court explained that the video showed Heppenstall "proceeded through an intersection at high speed and showed the Police Officer's path in pursuing the vehicle and ultimately the crash site." Trial Court Opinion, filed Oct. 21, 2018, at 8 ("1925(a) Op."). It concluded that "the use of the video evidence was wholly appropriate and no error was committed by the Court in its admission." **Id.**

The trial court did not abuse its discretion. To establish a conviction for fleeing or attempting to elude police officer as a third-degree felony, the Commonwealth had to establish Heppenstall endangered a law enforcement officer or member of the general public by engaging in a high-speed chase. 75 Pa.C.S.A. § 3733(a.2)(a)(iii). Here, Heppenstall stated during her opening that she "would not offer evidence to disprove that [Heppenstall] sped away from police" and conceded she "eluded police," N.T., 5/10/18, at 25, and the court stated during the jury instructions that Heppenstall's counsel said she fled. **Id.** at 106. However, Heppenstall said nothing about the other elements of the crime, and the Commonwealth was still required to meet its burden of

establishing all elements of fleeing or attempting to elude a police officer, including that she endangered others by engaging in a high-speed chase, beyond a reasonable doubt. The video was probative and did not cause unfair prejudice.

In this section, Heppenstall also attempts to argue the court erred regarding the exchange regarding the tactical vest found in the car. Heppenstall, however, has waived the claim. She did not object to the Commonwealth's comments at trial. Rather, the Commonwealth objected to Heppenstall's questions regarding the vest. Further, she suffered no prejudice from the exchange.

## III. Prosecutorial Misconduct

Heppenstall next claims the trial court abused its discretion when it provided an inadequate cautionary instruction after the Commonwealth violated a pre-trial order barring mention that Heppenstall was in possession of marijuana. She claims that the Commonwealth violated this order by arguing during closing that Heppenstall did not stop because she knew the firearm was in the car. Heppenstall claims the Commonwealth "knew full well that Ms. Heppenstall was in possession of marijuana/drug paraphernalia and that other reasons existed for her attempting to elude police." Heppenstall's Br. at 14.

We review a claim of prosecutorial misconduct for an abuse of discretion. *Commonwealth v. Jones*, 191 A.3d 830, 835 (Pa.Super. 2018). "[A]ny challenged prosecutorial comment must not be viewed in isolation, but rather

must be considered in the context in which it was offered." *Id.* Further, we review of a prosecutor's comment to determine "whether a defendant received a fair trial, not a perfect trial." *Id.* (quoting *Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa.Super. 2016)). Therefore, a prosecutor's statements during closing argument will form the basis of a grant of a new trial only where "the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Id.* (quoting *Jaynes*, 135 A.3d at 615).

In its closing, the Commonwealth stated:

> [I]t doesn't make sense why . . . Heppenstall, a mother of two, would lead a police officer on a high speed chase which was over almost two miles which resulted in her leaving the scene in an ambulance. . . . [S]he did know that gun was in that vehicle and she knew as a person not to possess a firearm due to that prior felony conviction, she really, really did not want to get caught with that gun in that car by Officer Howard.

N.T., 5/10/18, at 89. Heppenstall then asked for, and the trial court provided, a cautionary instruction informing the jury that Heppenstall had also had marijuana with her, which would also provide incentive to flee. *Id.* at 94-95. Afterward, Heppenstall stated the cautionary instruction was fine, did not lodge any complaint or objection to the instruction, and did not request a mistrial.

Heppenstall has waived any claim as to a mistrial because she did not request a mistrial following closing, and waived a challenge to the cautionary

instruction by agreeing to the instruction. **See** Pa.R.Crim.P. 605(B) (providing "[w]hen an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed"); **Commonwealth v. Gooding**, 818 A.2d 546, 552 (Pa.Super. 2003) (explaining failure to make timely, specific objection to jury instruction waives challenge to content of jury instruction on appeal).

Further, even if she had not waived the claim, we would conclude it lacked merit. The trial court explained that the Commonwealth did not violate a rule or order of the court when it inferred that Heppenstall's motivation to flee was her possession of a firearm. It also stated that Heppenstall objected, and the trial court "remedied any misconception by an appropriate instruction." 1925(a) Op. at 5.

The trial court did not abuse its discretion. The Commonwealth did not mention Heppenstall's possession of marijuana. Further, although the possession of marijuana may have led her to flee, the possession of the firearm also may have provoked flight, particularly in light of the evidence presented at trial. Further, following Heppenstall's objection, the trial court provided the requested cautionary instruction.

### IV. Inconsistent Verdicts

Heppenstall next argues that relief is warranted based on the jury's inconsistent verdicts. She notes that the jury found her guilty of carrying firearms not to be carried without a license but not guilty of persons not to possess firearms. She argues that "[d]espite [the trial court's] best effort to

- 17 -

explain to the jury what possession was, they were obviously confused." Heppenstall's Br. at 14.

Inconsistent verdicts "are allowed to stand so long as the evidence is sufficient to support the conviction." ***Commonwealth v. Miller***, 35 A.3d 1206, 1208 (Pa. 2012). "[A]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." ***Id.*** at 1209 (quoting ***Commonwealth v. Carter***, 282 A.2d 375, 376 (Pa. 1971)). Rather, "an acquittal of a charge for which there was sufficient evidence for conviction is an occasion of a 'jury's assumption of a power which [it] had no right to exercise, but to which [it was] disposed through lenity.'" ***Id.*** (quoting ***Carter***, 282 A.2d at 376) (alterations in original).

Here, because sufficient evidence supported the carrying a firearm without a license conviction, no relief is due.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/26/2019

- 18 -