2017 PA Super 383

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THOMAS MARCEL SCOTT | |
| Appellant | No. 1470 WDA 2016 |

Appeal from the Judgment of Sentence June 23, 2016
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0002049-2015

BEFORE:  OLSON, J., MOULTON, J., and STRASSBURGER, J.[*]

OPINION BY MOULTON, J.:                    FILED DECEMBER 08, 2017

Thomas Marcel Scott appeals from the June 23, 2016[1] judgment of sentence following his conviction for one count of firearms not to be carried without a license, 18 Pa.C.S. § 6106(a)(2).  We reject Scott's claim that he qualified for an exception to section 6106 of the Pennsylvania Uniform Firearms Act of 1995 ("PUFA"), which prohibits carrying a concealed firearm without a license.  Nevertheless, because the trial court erred in finding Scott strictly liable for carrying a concealed firearm, we vacate the judgment of

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Scott's notice of appeal lists the date of the judgment of sentence as September 2, 2016, the date the trial court denied his post-sentence motion. The appeal, however, properly lies from the date of the judgment of sentence, June 23, 2016.  See Commonwealth v. Dreves, 839 A.2d 1122, 1125 n.1 (Pa.Super. 2003) (en banc).

sentence and remand for a new trial. For the reasons discussed below, we hold that to establish a violation of section 6106, the Commonwealth must establish that the defendant intentionally, knowingly, or recklessly concealed the firearm.

The trial court summarized the facts of this case as follows:

> At trial, Detective James Horwatt of the New Kensington Police Department testified that on April 18, 2015, he received a call to respond to a report of domestic violence at 119 Kenneth Avenue in New Kensington, Westmoreland County. He proceeded to the residence, and spoke to the victim, Kristin Kalinowski, who identified [Scott]. Shortly thereafter, Detective Horwatt was informed that [Scott] was directly in front of the post office on 11th Street in New Kensington. Upon traveling to the location and observing [Scott], Detective Horwatt exited his patrol vehicle and told [Scott] to raise his hands so that he could see them. Detective Horwatt placed [Scott] under arrest for domestic violence, and conducted a physical pat-down of [Scott] for weapons.
>
> Detective Horwatt stated that upon placing [Scott] in handcuffs and conducting the pat-down, a Sig Sauer handgun in its holster was located under [Scott's] t-shirt. He testified that [Scott's] t-shirt was not tucked in, but was loose, and hanging over the firearm, so that the weapon was completely concealed.
>
> [Scott] testified that although the t-shirt was concealing the firearm, it was not done so intentionally. He opined:
>
>> I mean on that particular morning when I would have got dressed the shirt would have been tucked in. When I sat on the bench it was tucked in. I had a hooded sweatshirt and I was sitting there and I got warm and pulled the sweatshirt over my head and I believe incident [sic] of me removing it[,] it became untucked.
>
> Detective Horwatt further testified that [Scott] showed him his Act 235 Permit, and that [Scott] mentioned that he was either coming back or returning to work. [Scott]

- 2 -

testified that at the time of his arrest, he was working in the field of asset protection[2] for a pawnshop as well as a clothing store in Pittsburgh. He also stated that at the time he was arrested, his intention was to travel to Allegheny County to attend a qualification shooting course for a seasonal job as a public safety officer with a local amusement park.

Trial Ct. Op., 9/2/16, at 1-3 (internal citations and footnote omitted) (some alterations in original).

On June 23, 2016, following a bench trial, the trial court convicted Scott of one count of firearms not to be carried and sentenced him to 7 to 14 months' incarceration. Scott filed a timely post-sentence motion, which the trial court denied on September 2, 2016. Scott timely appealed to this Court.

On appeal, Scott raises the following issues:

> I. Whether Judge Hathaway abused her discretion in denying [Scott's] motion for judgment of acquittal for count 1 since [Scott] was exempt under 18 Pa.C.S. § 6106(B)(1) [and] (6).
>
> II. Whether the guilty verdict was against the weight of the evidence in that the Commonwealth did not establish that [Scott] believed the firearm was concealed or that he had acted intentionally, knowingly, recklessly or negligently in possessing the firearm.
>
> III. Whether the guilty verdict was against the weight of the evidence in that the Commonwealth did not establish that [Scott] was aware that the firearm was concealed and therefore unable to terminate possession.

_____

[2] At trial, Scott testified he was employed in the field of "asset protection," which was the same as employment as a security guard. N.T., 6/22-23/17, at 64.

- 3 -

IV. Whether Judge Hathaway abused her discretion in finding [Scott] guilty which was against the weight of the evidence.

Scott's Br. at vii.  In essence, Scott raises two claims:  (1) He was not required to have a license because he had a Lethal Weapons Training Act ("Act 235")[3] certification card or because he qualified for an exception under section 6106; and (2) Scott did not have the mens rea required to commit the crime.[4]

I.    Whether Scott Was Required to Have a License to Carry a Concealed Firearm

Section 6106 makes it unlawful for a defendant to "carr[y] a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter." 18 Pa.C.S. § 6101(a)(1).  Scott first claims that the Commonwealth failed to present sufficient evidence[5] to establish a violation of section 6106 because (1) he possessed a valid Act 235 certification card and (2) he qualified for an exception to the concealed-carry prohibition due to his employment as a security guard at a pawn shop and clothing store.

_____

[3] Act No. 1974-235, P.L. 705 (Oct. 10, 1974), 22 P.S. §§ 41 to 50.1.

[4] Scott framed this issue as a claim that the verdict was against the weight of the evidence.  The issue, however, is whether the trial court erred as a matter of law by applying an improper legal standard.  Because Scott raised the substance of the issue—that the statute required a mens rea to conceal the weapon and the Commonwealth failed to establish the required mens rea—we conclude he has not waived it.

[5] "Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first." Commonwealth v. Toritto, 67 A.3d 29, 33 (Pa.Super. 2013) (en banc).

A. Act 235 Certification

"Act 235 requires privately employed agents who carry lethal weapons to attend an educational and training program established by the State Police Commissioner and provides for them to receive 'certification' when the program is satisfactorily completed." Commonwealth v. Anderson, 169 A.3d 1092, 1099 (Pa.Super. 2017) (en banc). We recently held that "Act 235 is not a 'substitution' for a license to carry a firearm and that Act 235's provisions do not supersede the licensing requirements in the PUFA." Id. at 1103. Rather, "an individual who carries a firearm incident to employment is required to comply with both" the PUFA and Act 235. Id. (emphasis omitted). Therefore, Scott's Act 235 certification has no bearing on whether he violated section 6106 of the PUFA.

B. Section 6106(b) Exceptions

Section 6106(b) lists exceptions to the concealed-carry prohibition, including the following:

> (b) Exceptions.--The provisions of subsection (a) shall not apply to:
>
> (1) Constables, sheriffs, prison or jail wardens, or their deputies, policemen of this Commonwealth or its political subdivisions, or other law-enforcement officers.
>
> . . .
>
> (6) Agents, messengers and other employees of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables and other property in the discharge of such duties.

18 Pa.C.S. § 6106(b)(1), (6).

When reviewing a trial court's interpretation of a statute, our standard of review is de novo, and our scope of review is plenary. Shafer Elec. & Constr. v. Mantia, 96 A.3d 989, 994 (Pa. 2014). Our Supreme Court has stated:

> "[T]he objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature." Bayada Nurses v. Dept. of Labor and Indus., 607 Pa. 527, 8 A.3d 866, 880 (2010) (citing 1 Pa.C.S. § 1921(a)). Generally, the best indication of the General Assembly's intent is the plain language of the statute. "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." Chanceford Aviation v. Chanceford Twp. Bd. of Supervisors, 592 Pa. 100, 923 A.2d 1099, 1104 (2007) (citations omitted).

Allstate Life Ins. Co. v. Commonwealth, 52 A.3d 1077, 1080 (Pa. 2012) (alteration in original).

Scott first maintains that, given his employment as a security guard, he falls under the exception for "[c]onstables, sheriffs, prison or jail wardens, or their deputies, policemen of this Commonwealth or its political subdivisions, or other law-enforcement officers." 18 Pa.C.S. § 6106(b)(1). Scott plainly does not fit within any of the specifically listed categories, all of which are limited to officers employed by government entities. Instead, Scott focuses on the catch-all "other law-enforcement officers" and argues that a privately employed security guard is an "other law-enforcement officer." We disagree.

Both this Court and our Supreme Court have addressed the proper interpretation of a general statutory provision that follows a list of specific

provisions. "Under the 'doctrine [of] ejusdem generis (of the same kind or class), where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated.'" Commonwealth v. Ryan, 909 A.2d 839, 842 n.6 (Pa.Super. 2006) (alteration in original) (quoting Independent Oil and Gas Ass'n of Pa. v. Bd. of Assessment Appeals, 814 A.2d 180, 184 (Pa. 2002)). Here, the language of the statute makes plain that the General Assembly intended the general class – "other law-enforcement officers" – to include only those individuals who share the central characteristic of those in the enumerated classes: employment by a government entity. This conclusion is reinforced by the existence of a separate exception, discussed below, that covers certain privately employed actors. See 18 Pa.C.S. § 6101(b)(6). To read section 6106(b)(1) as granting an exception for privately retained security guards would dramatically expand the reach of the exception without support in the statutory language.[6] This we decline to do.

Scott next maintains that his employment as a security guard at a pawn shop and clothing store qualifies him for the exception for "[a]gents, messengers and other employees of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables and other

_____

[6] We note that Scott himself relies only on the statutory language, and makes no argument based on the provision's history or purpose. See Scott's Br. at 4.

property in the discharge of such duties." 18 Pa.C.S. § 6106(b)(6). This exception permits someone employed by certain classes of entities to carry a concealed firearm, but only if the concealed carrying of the firearm occurs "in the discharge of [their] duties."

The limitation to the exception — that the person may carry a concealed firearm only in the discharge of their duties "to protect moneys, valuables and other properties" — is clear not only from the plain language of the exception, but also when read in context of the remaining exceptions. Subsection (b)(1), discussed above, permits those qualified for the exception to carry a concealed firearm with no limitation. Other exceptions, however, limit the permitted concealed carrying to specified times. For example, subsection (b)(2) permits "[m]embers of the army, navy, marine corps, air force or coast guard of the United States or of the National Guard or organized reserves when on duty"; and subsection 6106(b)(7) permits those engaged "in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person, having in his possession, using or carrying a firearm in the usual or ordinary course of such business." 18 Pa.C.S. § 6106(b)(2), (7) (emphasis added).[7] Therefore, we conclude that subsection

_____

[7] Additional exceptions with time limitations include:

> (b) Exceptions.--The provisions of subsection (a) shall not apply to:
>
> . . .

6106(b)(6) permits an individual to carry a concealed firearm only: (1) if his or her employment qualifies under the subsection; and (2) he or she carries a concealed firearm while discharging his or her duty to protect "moneys, valuables and other property."

The trial court, as finder of fact, concluded that Scott had failed to establish that he was carrying the concealed firearm "in the discharge of his duties."[8] Rather, Scott testified that he intended "to travel over to Allegheny County to attend a qualification shooting course for a seasonal job." N.T., 6/22-23/17, at 63. Accordingly, because Scott was not carrying the firearm in the discharge of his duties, the exception did not apply.[9]

_____

> (4) Any persons engaged in target shooting with a firearm, if such persons are at or are going to or from their places of assembly or target practice and if, while going to or from their places of assembly or target practice, the firearm is not loaded.
>
> . . .
>
> (9) Persons licensed to hunt, take furbearers or fish in this Commonwealth, if such persons are actually hunting, taking furbearers or fishing as permitted by such license, or are going to the places where they desire to hunt, take furbearers or fish or returning from such places.

18 Pa.C.S. § 6106(b)(4), (9).

[8] As discussed above, the exceptions in subsection (b) are affirmative defenses that the accused bears the burden of proving. See, e.g., Walton, 529 A.2d at 17.

[9] Because the trial court's finding that Scott did not carry the firearm in the discharge of his employment duties is fully supported by the record, we

II.    Mens Rea and Concealment of the Firearm

Scott next claims that that the verdict was against the weight of the evidence because he did not have the required mens rea to establish concealment under section 6106.  While Scott couches this as a weight claim, his argument is better understood as a challenge to the trial court's interpretation of an element of the crime.  Specifically, while the trial court treated concealment as a strict liability element, Scott argues that concealment requires a culpable mental state.  We agree.

As noted above, when reviewing a trial court's interpretation of a statute, our standard of review is de novo, and our scope of review is plenary. Shafer Elec. & Constr., 96 A.3d at 994.  Our Supreme Court has stated:

> "[T]he objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature."  Bayada[, 8 A.3d at 880] (citing 1 Pa.C.S. § 1921(a)).  Generally, the best indication of the General Assembly's intent is the plain language of the statute. "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent."  Chanceford Aviation[, 923 A.2d at 1104] (citations omitted).

Allstate Life Ins. Co., 52 A.3d at 1080 (some alterations in original).

At trial, Scott conceded that the weapon was concealed, but maintained that the concealment was accidental and unknowing.  He testified that the

_____

need not address whether Scott's employment as a security guard at a pawn shop and/or clothing store would qualify as employment as an agent, messenger, or other employee "of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables."  18 Pa.C.S. § 6106(b)(6).

- 10 -

firearm was holstered on his right hip and in plain view, but that his shirt became untucked without his knowledge. Because he was not aware that the firearm had become concealed, he was unable to correct the situation. He argues that his conviction should be overturned because he lacked the required mens rea to conceal the firearm.

Following trial, the court found:

> [A]lthough I think that your client probably did not intend to conceal the weapon, the weapon was concealed. I find beyond a reasonable doubt that the weapon was concealed and that your client does not fit any exception.

N.T., 6/22-23/16, at 107.

Scott filed a post-sentence motion arguing, among other things, that he lacked the mens rea required to commit the crime because he did not intend to conceal the firearm. Post-Sentence Motion, 7/5/16.[10] The trial court heard argument from both Scott and the Commonwealth and requested that the parties focus on whether the statute required that the Commonwealth establish that Scott "intended"[11] to conceal the firearm. See, e.g., N.T., 8/9/16, at 2-3, 5. The trial court denied the motion, concluding:

_____

[10] Scott also advanced this argument at trial. N.T., 6/22-23/16, at 78-79.

[11] Scott's counsel argued that "a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly, or negligently, as the law may require." N.T., 8/9/16, at 10.

> Lastly, it was undisputed that [Scott's] firearm was concealed at the time that he was approached by officers. [Scott] only argues that he did not intend to conceal said firearm. There is no intent requirement under aforementioned statute. The fact that the firearm was completely undetectable to an observer is sufficient under §6106 to support a guilty verdict. . . .
>
> Because [Scott] has conceded that his firearm was concealed at the time of his arrest, the Commonwealth has met its burden, and this Court did not err in finding [Scott] guilty of the charged offense.

Trial Ct. Op., 9/2/16, at 4-5 (some alterations in original).[12]

Section 6106(a) provides:

> (a) Offense defined.--
>
> (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.
>
> (2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S. § 6106(a).

Section 6106 does not include an express mens rea requirement with respect to any of its elements. We must therefore determine "whether a mens

---

[12] The Commonwealth argued that the evidence presented at the trial, including Scott's testimony that he removed a sweatshirt, established Scott's intent to conceal the firearm. N.T., 8/9/16, at 14-16. In denying the motion, the trial court determined that intent was not required.

rea is required . . ., and if so, which level." Commonwealth v. Moran, 104 A.3d 1136, 1149 (Pa. 2014). The Pennsylvania Supreme Court has held that "[section] 302 provides the default level of culpability where a criminal statute does not include an express mens rea." Id. Section 302(c) provides:

> (c) Culpability required unless otherwise provided.-- When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.

18 Pa.C.S. § 302(c).

> Further:

> [A]bsolute liability criminal offenses are "generally disfavored," and, absent indicia of legislative intent to dispense with a mens rea, a statute will not be held to impose strict liability. See Commonwealth v. Mayfield, 574 Pa. 460, 832 A.2d 418, 426–27 (2003) (citations omitted). Although the imposition of strict liability is generally disfavored, this Court has recognized the legislature may create statutory offenses dispensing with a mens rea in fields that are essentially non-criminal in order "to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt." Commonwealth v. Koczwara, 397 Pa. 575, 155 A.2d 825, 827–28 (1959). The penalty for such offenses concerning the public welfare is generally relatively light. Id., at 827.

Moran, 104 A.3d at 1149. "The more serious the penalty, such as a lengthy term of imprisonment, the more likely it is that the legislature did not intend to eliminate the mens rea requirement (unless the legislature plainly indicates otherwise in the language of the statute, as for statutory rape)." Commonwealth v. Pond, 846 A.2d 699, 707 (Pa.Super. 2004).

- 13 -

There is no indication in the text of section 6106 that the legislature intended to impose strict liability. Further, section 6106 is a criminal statute, a violation of which is either a first-degree misdemeanor or third-degree felony. Therefore, a convicted defendant faces a maximum of 5 years' or 7 years' imprisonment. 18 Pa.C.S. § 106(b)(4), (6). Given the criminal nature of the offense, and the penalties that could be imposed for a violation, we should not lightly assume that the legislature intended to impose strict liability.

Accordingly, because section 6016 does not contain an express culpability requirement, and because the legislature has not plainly indicated its intent to create a strict-liability crime, we hold that to establish a violation of section 6106, the Commonwealth must establish that a defendant acted "intentionally, knowingly or recklessly" with respect to each element, including the concealment element. See, e.g., Moran, 104 A.3d at 1150; Gallagher, 924 A.2d at 640.[13]

_____

[13] Both the Commonwealth and the trial court rely on Commonwealth v. Pressley, 249 A.2d 345 (Pa. 1969), for the proposition that the element of concealment in section 6106 does not require a culpable mental state. This reliance is misplaced. In Pressley, the defendant was found guilty of firearms not to be carried, but not guilty of carrying a concealed deadly weapon. Id. at 345. On appeal, the defendant argued that the elements of the crimes were the same, and, therefore, the acquittal as to the carrying a concealed deadly weapon charge precluded a conviction on the firearms not to be carried charge. The Supreme Court stated:

- 14 -

The trial court concluded that Scott "probably did not intend to conceal the weapon," N.T., 6/22-23, at 107, but found him guilty nonetheless, based on its view that section 6106 contains "no intent requirement," Trial Ct. Op., 9/2/16, at 4. While the court did not consider whether Scott acted "knowingly or recklessly" with respect to concealment, its verdict appears to have been based on the conclusion that concealment is a strict liability element of the offense, requiring no culpable mental state at all.

The trial court erred by applying an incorrect legal standard and finding Scott guilty based on mere concealment, without determining whether Scott knowingly or recklessly concealed the firearm. Accordingly, we must vacate the judgment of sentence and remand for a new trial.[14]

_____

> [A]ppellant could be convicted [of carrying a concealed deadly weapon] only for carrying a 'firearm . . . concealed upon his person . . . with the Intent therewith Unlawfully and maliciously to do injury to any other person . . .' No such intent is necessary to sustain a conviction under the Uniform Firearms Act charge[.]

Id. at 346 (emphasis added). In Pressley, the Court held that the Commonwealth need not establish an intent to "unlawfully and maliciously to do injury to any other person" to establish a firearm not to be carried conviction. Id. It did not address whether the Commonwealth had to establish a culpable mental state for the element of concealment.

[14] Scott also argues that he believed he could carry the concealed firearm because he had an Act 235 certification. As discussed above, an Act 235 certification is not a substitute for a license under PUFA. Further, that Scott may have believed that the certification permitted him to carry a concealed firearm is not a defense. See 18 Pa.C.S. § 304, Official Comment ("Generally speaking, ignorance or mistake of law is no defense.").

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2017