J-A20001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANNY EDWARD MCELROY | : | |
| | : | |
| Appellant | : | No. 9 WDA 2021 |

Appeal from the Judgment of Sentence Entered December 1, 2020
In the Court of Common Pleas of Greene County
Criminal Division at No(s):  CP-30-CR-0000016-2019

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED: MARCH 7, 2022**

Danny Edward McElroy presents challenges to the convictions of two firearm offenses underlying his judgment of sentence. McElroy's defense to the crimes is that he did not know that a gun was concealed in the waistband of his pants because it had been planted there by a friend. We affirm the judgment of sentence.

At noon on January 2, 2019, Frank Smith was walking to a local store in Carmichaels, PA when he heard gunshots and noticed two females, one holding a gun, standing near a white SUV. Smith entered the store and called 911.

Chief Craig Miller of the Carmichaels Police Department was dispatched to the area. When he arrived at the scene, police from Cumberland Township were speaking with two residents of an apartment building, and three of the

four occupants of the white SUV. At the time, McElroy was sleeping in the rear passenger seat of the SUV. None of the people present mentioned that gunshots were fired. Police arrested the driver of the SUV on an outstanding warrant.

That same day at approximately 6:00 p.m., Chief Miller was dispatched to the same residence, at which point he noticed bullet holes in the door. After speaking to the two residents of the apartment about the bullet holes and the earlier incident, the chief placed an alert for the white SUV.

Cumberland Township Police Officer George Devault spotted the SUV parked in an alley. Jessica Moore Miller, who appeared to be intoxicated, was outside of the vehicle and got into the driver's seat and McElroy was in the front passenger seat. Officer Devault stopped the vehicle when Moore Miller attempted to drive it, and he placed her under arrest.

When Sergeant Eric Orr of the Cumberland Township Police arrived, he and Officer Devault approached McElroy and noticed a holster on the floor of the SUV near his feet. McElroy appear to be lethargic and, as they attempted to get him out of the vehicle, the police observed McElroy reaching for a bulge in his waistband three or four times. At each instance, Officer Devault instructed McElroy to stop and pushed his hand away. When he observed the bulge was the butt of a firearm, Officer Devault removed the weapon from McElroy's waistband.

The item was a 9-millimeter handgun, with one round of ammunition in the chamber. McElroy was taken into custody by Chief Miller. When Chief Miller read McElroy his Miranda rights, McElroy stated that he "was fucked." Forensic analysis did not reveal any of McElroy's DNA or fingerprints on the weapon.

McElroy was charged with person not to possess a firearm and carrying a firearm without a license. Prior to trial, the parties stipulated that the firearm was registered to Moore Miller, neither Moore Miller nor McElroy had a permit to carry a firearm, and McElroy was prohibited from carrying a firearm due to a prior conviction. On March 9, 2020, a jury convicted McElroy of both charges.

McElroy was initially sentenced on June 4, 2020. He filed timely post-sentence motions. On October 5, 2020, the trial court denied McElroy's request for a new trial and granted his request for resentencing. On December 1, 2020, the trial court sentenced McElroy to serve terms of incarceration of four to eight years for the conviction of person not to possess and a concurrent three to six years for possession without a license. Again, McElroy filed timely post-sentence motions, which the trial court denied. This appeal followed.

McElroy presents four issues for our consideration. He assails the trial court's charge to the jury and the denial of his request to continue the trial. He also challenges the sufficiency and the weight of the evidence to support his convictions.

McElroy first argues that the trial court erred in providing jury instructions. In essence, he contends the trial judge erred by disjointedly instructing the jury on the elements of the crimes at the beginning of the trial and immediately before closing arguments but did not adequately instruct immediately before the jury retired to deliberation. McElroy further asserts that the trial court's instruction improperly indicated that the parties had stipulated to the element of possession and failed to address the *mens rea*.

"[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." ***Commonwealth v. Charleston***, 94 A.3d 1012, 1021 (Pa. Super. 2014) (citation omitted). "The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury." ***Commonwealth v. Ballard***, 80 A.3d 380, 407 (Pa. 2013) (citation omitted). The instructions must adequately, accurately, and clearly present the law to the jury and must be sufficient to guide the jury in its deliberations. ***See Commonwealth v. Jones***, 672 A.2d 1353, 1358 (Pa. Super. 1996).

In addition, before we reach the merits of McElroy's claim, we must determine whether the issue has been preserved for appellate review. A party's obligations to object to jury instructions are set forth in Pennsylvania Rule of Criminal Procedure 647, which provides, in relevant part, as follows:

**Rule 647. Request for Instructions, Charge to the Jury, and Preliminary Instructions**

> (B) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.

Pa.R.Crim.P. 647(B). **See also** Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of").

Interpreting this rule, our Supreme Court has held that the plain language of Rule 647(B) requires a specific objection to assign error to a controverted aspect of or omission from a jury charge. **See Commonwealth v. Pressley**, 887 A.2d 220, 223 (Pa. 2005). The Court has held further that in the event counsel fails to posit the appropriate objection prior to the jury's retirement for deliberation, the underlying point is not preserved for appellate review and will be deemed waived on appeal. **See id**. **See also Commonwealth v. Sherwood**, 982 A.2d 483, 505 (Pa. 2009) (citing Pa.R.Crim.P. 647(B)); **Commonwealth v. Montalvo**, 956 A.2d at 935-936 (Pa. 2008) (holding that the law is clear that in order to preserve a claim predicated on an allegedly erroneous jury instruction, a litigant must raise an objection before the jury retires to deliberate).

Our review of the record reflects that the trial court instructed the jury on the elements of the crimes at the outset of the trial, immediately before the attorneys presented their opening remarks. **See** N.T., 3/9/20, at 3-7. Defense counsel did not offer objections at that time.

After the defense rested and before the attorneys presented their closing arguments, the trial court presented jury instructions, which again set forth the elements of the crimes charged. *See id*. at 112-118. During these instructions, defense counsel inquired about the timing of the instructions coming before closing arguments, and the trial court stated its reasoning for the order of events. *See id*. at 114-115. After accepting the trial court's explanation, defense counsel noted her objection to the trial judge saying "that [McElroy] was in possession" and indicated "that's a finding for the jury based on mens rea." *Id*. at 115. The trial court agreed with defense counsel and continued with the jury instructions, specifically focusing on the necessary *mens rea*. *See id*. at 115-118. Defense counsel did not object to the language utilized by the trial court.

After both parties offered closing arguments, the trial court again instructed the jury, with a focus upon the burden of proof and credibility determinations. *See* N.T., 3/9/20, at 123-136. When defense counsel raised a concern regarding the need to instruct on the elements of the crimes and *mens rea* again, the trial court capitulated. *See id*. at 131-132. However, when the trial court began to instruct on the elements of the offenses and the necessary *mens rea*, defense counsel interrupted with an unrelated requested clarification pertaining to a stipulation on ammunition. *See id*. at 134. Thereafter, the trial court gave the following instruction immediately before the jury retired to deliberate, "[O]nce again, I read the elements [of the

crimes] to you two different times, I read the stipulations to you, and again, the important thing to remember is the law that I had read to you on culpability, intent, and what we refer to as mens rea." *Id*. at 135. Defense counsel did not make any further objections prior to the jury retiring to deliberate.

At the conclusion of the instructions to the jury, McElroy had an opportunity to make a timely objection to the instruction as given and did not do so. Moreover, the record reflects that McElroy never presented a specific objection to the language used in the *mens rea* instructions. Accordingly, because Appellant failed to object to the trial court's jury instructions before the jury retired to deliberate, his claim challenging the instructions pertaining to the elements and *mens rea* of the crimes is waived. Regarding McElroy's argument that the trial court erred in presenting the instructions in a disjointed manner, we discern that the instructions were proper and sufficient to guide the jury in its deliberations. Accordingly, there is no merit to McElroy's argument.

Next, McElroy argues that the trial court erred in denying his pretrial request for a continuance. McElroy claims that he was entitled to a continuance based on undisclosed evidence of the investigation of the shooting incident involving the same gun that is the subject of McElroy's case, and Moore Miller, who was in the vehicle with McElroy at the time he encountered the police.

"The decision of whether to grant or deny a request for a continuance is within the sound discretion of the trial judge." ***Commonwealth v. Pries***, 861 A.2d 951, 953 (Pa. Super. 2004) (citation omitted). An abuse of discretion is "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused." ***Id***. (citation omitted). "The refusal to grant a continuance constitutes reversible error only if 'prejudice or a palpable and manifest abuse of discretion is demonstrated.'" ***Id***. (quoting ***Commonwealth v. Griffin***, 804 A.2d 1, 12 (Pa. Super. 2002)).

The record indicates that prior to the commencement of trial, defense counsel requested a continuance. ***See*** N.T., 3/9/20, at 7. Specifically, she noted that there was an ongoing investigation of the shooting incident from earlier in the day that McElroy was arrested. ***See id***. Counsel indicated that the information obtained in the investigation would be exculpatory to McElroy because it would identify Moore Miller as the shooter and offer a motive for her to plant the gun on McElroy. ***See id***. at 7-8. The Commonwealth agreed that the investigation was still ongoing but indicated that all evidence received by the Commonwealth had been provided to McElroy. ***See id***. at 8. The trial court observed in its opinion that results from the investigation were not necessary for McElroy to present his theory that the gun had been planted on his person, which was the defense presented at trial. ***See*** Trial Court Opinion,

10/5/20, at 9-10. As the Commonwealth stated in its appellate brief, Chief Miller testified that neither McElroy's DNA nor his fingerprints were found on the firearm. **See** Commonwealth's Brief at 11 (citing N.T., 3/9/20, at 38-40). Thus, any further test results would not add to the exculpatory evidence presented by Chief Miller, which supported the defense theory offered at trial.

Accordingly, we are left to conclude that McElroy has failed to establish an abuse of discretion by the trial court in declining to grant his motion for continuance. McElroy has failed to demonstrate that, in reaching a conclusion, the trial court has overridden or misapplied the law. Further, he has not established that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. Therefore, McElroy has not shown that the trial court's decision refusing to continue his trial constituted an abuse of discretion, and this claim lacks merit.

McElroy next argues that the Commonwealth did not present sufficient evidence to support his firearm violation convictions. Specifically, he claims that the Commonwealth did not prove the necessary *mens rea* to support the convictions.

Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. **See Commonwealth v. Dale**, 836

A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Id***. (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. ***See id***. "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." ***Commonwealth v. Kinney***, 863 A.2d 581, 584 (Pa. Super. 2004) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Bruce***, 916 A.2d at 661 (citation omitted).

To be convicted on a charge of persons not to possess firearms, the Commonwealth must prove two elements: a previous conviction for an enumerated offense and possession or use of a firearm. ***See*** 18 Pa.C.S.A. § 6501(a)(1). "For a person to "possess" a firearm, he or she must have the intent to control and the power to control the firearm." Pa.SSJI (Crim) 15.6105. McElroy is not challenging whether he had a previous conviction preventing him from possessing a firearm. Rather, he is challenging whether he had the intent to control and the power to control the firearm.

The elements of carrying a firearm without a license are met by "any person who carries a firearm concealed on or about his person ... without a valid and lawfully issued license under this chapter[.]" 18 Pa.C.S.A § 6106(a)(1). Section 6106 does not contain a specific *mens rea* requirement. Further, there is no indication the legislature intended to impose strict liability for the crime. Therefore, "the Commonwealth must establish that a defendant acted 'intentionally, knowingly or recklessly' with respect to each element" of Section 6106(a). **Commonwealth v. Scott**, 176 A.3d 283, 291 (Pa. Super. 2017). McElroy is not challenging whether he had license to carry the firearm, he is only challenging whether he intentionally, knowingly, or recklessly carried the firearm in question under the statute.

Our review of the record establishes that Officer Devault, the police officer who recovered the firearm from the defendant's person, testified at McElroy's trial and explained that when he was assisting in removing McElroy from the SUV, he observed McElroy reaching for a bulge in his waistband "many times." **See** N.T., 3/9/20, at 56-58. In addition, Officer Orr testified regarding his presence at the scene. The officer stated that he observed a conceal carry purse and a holster at McElroy's feet while he was in the vehicle. **See id**. at 73-75. Officer Orr further explained the circumstances surrounding the removal of McElroy from the vehicle and noted that the defendant had reached for a bulge in his waistband multiple times and Officer Devault repeatedly knocked McElroy's hand away from the waistband. **See id**. at 75-

76. Officer Orr further testified that Officer Devault kept yelling at McElroy to "stop reaching." *See id*. at 76. Chief Miller also testified that during the incident he "heard some yelling from the officers [for McElroy] to stop reaching." *See id*. at 28-29. Further, Chief Miller explained that when McElroy was read his Miranda warnings, he stated that he "was fucked." *See id*. at 30.

The totality of this evidence and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth, although circumstantial, is sufficient to permit the jury to infer that McElroy had the intent and power to control the firearm. The evidence further is sufficient to establish McElroy knowingly carried the firearm concealed at his waist when he was removed from the SUV. Therefore, Appellant's claim that the Commonwealth failed to present sufficient evidence to prove the required *mens rea* for each of the firearm crimes lacks merit.

McElroy last argues that the verdict was against the weight of the evidence. He alleges that the evidence presented supports his version of the events, *i.e.*, that the gun was planted on him while he was unconscious. We disagree.

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. *See Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999) (citation omitted). When considering a motion that a verdict was

against the weight of the evidence, a "trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Chamberlain***, 30 A.3d 381, 396 (Pa. 2011) (citation omitted).

This Court's standard of review of a trial court's decision regarding a weight of the evidence claim is limited to determining whether the trial court palpably abused its discretion in concluding that the verdict was or was not against the weight of the evidence. ***See Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." ***Commonwealth v. Talbert***, 129 A.3d 536, 546 (Pa. Super. 2015) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted)

The jury, sitting as the finder of fact, chose to believe the evidence presented by the Commonwealth, as well as the logical inferences derived therefrom, as was its right. In addressing McElroy's challenge to the weight of

the evidence, the trial court made the following observation regarding the facts established by the evidence:

> There was no evidence presented that the Commonwealth's witnesses lied or otherwise misled the jury. The testimony of the police officers that [McElroy] repeatedly appeared to reach toward his waistband where a weapon was found, and [McElroy's] statement to Chief Craig Miller after being read his "Miranda warning" that he "was fucked," if believed by the jury, would remove the likelihood that their verdict was "pure conjecture" nor that the verdict would "shock one's sense of justice."

Trial Court Opinion, 8/5/20, at 6-7. We can find no abuse of discretion in this conclusion.

The jury weighed the evidence and concluded McElroy was the perpetrator of the firearms crimes in question as he possessed the gun with the requisite *mens rea* for each crime. This determination is not so contrary to the evidence so as to shock one's sense of justice. We decline McElroy's invitation to assume the role of fact finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in determining McElroy's weight of the evidence claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  03/07/2022