J-S43011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID ANTONIO SAPP | : | |
| | : | |
| Appellant | : | No. 38 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 7, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005733-2021

BEFORE:   McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: MARCH 5, 2024**

David Antonio Sapp appeals from the judgment of sentence entered following his conviction for firearms not to be carried without a license. 18 Pa.C.S.A. § 6106(a)(1). He challenges the sufficiency of the evidence. We affirm.

Sapp was arrested after attempting to enter a house that was not his. He was charged with firearms not to be carried without a license and loitering and prowling at night.[1]

At trial, the owner of the home, Carol Gleaves, and Detective Christen Batten testified. Gleaves testified that on October 7, 2021, at 3:00 a.m., she was at home watching television. N.T., Oct. 20, 2022, at 88-89. She heard

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 5506.

some noise outside her open window, "like, heavy breathing or something." *Id.* at 89. She testified there was a man looking in the window, stating it was dark and she thought he was wearing a hoodie. *Id.* at 90. She stated he was "half[]way up my window, which would mean he would be pretty tall." *Id.* Gleaves testified she told him to leave. *Id.* at 91. She returned to watching television and shortly after got up to go to bed. *Id.* At that time, she heard and saw the doorknob turning and called the police. *Id.* at 91-92. Gleaves testified she did not get a good look at the person outside her house, but identified Sapp as the perpetrator at trial. *Id.* at 93-94. On cross-examination, defense counsel asked whether Gleaves had seen Sapp "brandish any weapons," and she responded that she had not. *Id.* at 99.

Detective Batten[2] testified that he was on duty on the night of October 7, 2021, and responded to a dispatch for a suspicious person at Gleaves' address, where the caller had stated a male was trying to enter her home. *Id.* at 101. He stated that when he arrived at the location, Sapp was trying to enter the home. *Id.* Detective Batten testified that he asked Sapp what he was doing, and Sapp responded that he was "at home." *Id.* at 102. Detective Batten stated that when Sapp turned to face him, the detective saw a "small portion of a handgun, a handle of a handgun protruding out of [Sapp's] waistband." *Id.* at 102-03. He stated the firearm was in Sapp's waistband, near his right pocket. *Id.* at 103. Detective Batten testified that when he saw

_____

[2] At the time of trial, Detective Batten was an acting detective. N.T. at 100.

the firearm, he informed Sapp he was going to take it for his and Sapp's safety, and Sapp complied. *Id.* Detective Batten stated he knew it was a firearm because he carries one daily and recognized it as part of his job. *Id.* He testified the barrel of the gun was three and a half to four inches, and he was unable to see that prior to removing the gun from Sapp. *Id.* at 105-06. He stated the firearm was loaded and that Sapp did not have a license to carry a concealed firearm. *Id.* at 106-07.

On cross-examination, Detective Batten agreed that it was dark and stated that he was three to five feet from Sapp when he noticed the firearm. *Id.* at 108. He further stated that as they continued to talk, Sapp told him that "his peoples lived there." *Id.* at 109. Detective Batten testified that Sapp's actual address was about six houses down from Gleaves's home. *Id.* at 110.

The jury found Sapp guilty of carrying a firearm without a license and not guilty of loitering and prowling at night. The court sentenced him to six to 12 months' incarceration and 12 months' probation. Sapp filed a timely notice of appeal.

Sapp raises the following issue:

> Whether the evidence was insufficient to sustain . . . Sapp's conviction for carrying a firearm without a license where there was no evidence Sapp had the requisite intent to conceal the firearm?

Sapp's Br. at 4.

Sapp argues the Commonwealth presented insufficient evidence that he intended to conceal his firearm or actually concealed his firearm, as required by 18 Pa.C.S.A. § 6106. He points out that his firearm was visible from his waistband, and Detective Batten "readily identified the firearm from a distance of five feet after [Sapp] turned towards him, and [Sapp] complied with the officer when the officer asked to take the firearm for safety purposes." *Id.* at 8. Sapp claims the Commonwealth presented no evidence of intent to conceal the firearm and no evidence it was actually concealed, because the "totality of the circumstances indicate[s] he kept the firearm plainly visible when spoken to by the uniformed officer." *Id.* Sapp argues that he made no moves to hide the firearm. He argues the "handle was as evident as it would have been in any regular hip holster that covered the body of the firearm while leaving the handle exposed." *Id.* at 12. Sapp further argues that his behavior complied with the primary purpose behind the concealed carry statute, which is "to apprise citizens of the fact that an individual is carrying deadly force, thereby lessening the chance that such individual could take his adversary, or anyone else, by a fatal disadvantage." *Id.* at 13 (quoting *Commonwealth v. Montgomery*, 234 A.3d 523, 536 (Pa. 2020)).

The Commonwealth counters that it presented sufficient evidence to sustain the conviction for firearms not to be carried without a license because Gleaves testified as to what Sapp was wearing but did not mention a weapon. It argues it "was only the trained police officer who was on alert responding to a potential burglary call that observed the weapon in [Sapp's] waistband

once [Sapp] turned to face him from five feet away." Commonwealth's Br. at 7. It argues the jury found the evidence sufficient as Sapp "successfully concealed his firearm from the victim/homeowner, and it was only partially exposed when [Sapp] turned to interact with the police officer." *Id.* It notes that the test for whether a defendant concealed a firearm is fact-specific, and relies on the fact-finder to reach a conclusion.

The Commonwealth maintains that although Detective Batten was able to identify the firearm, that observation "is not what the statute . . . intended to protect under 'ordinary observation.'" *Id.* at 10. Rather, Detective Batten "was a trained officer responding to a potentially dangerous situation on high alert for something such as a firearm." *Id.* at 11. The Commonwealth further points out that Sapp does not address Gleaves' testimony, claiming that when asked whether Sapp displayed any weapons, "Gleaves stated she had not seen [Sapp] with any weapons." *Id.* It argues that Gleaves' testimony is more applicable to the ordinary observation standard. It argues that Gleaves, Sapp's "adversary," did not know that he had a firearm readily available in his waistband. *Id.* at 11-12. The Commonwealth argues it can prove the intent element, that is, that Sapp acted intentionally, knowingly, or recklessly, by circumstantial evidence. It maintains that here, Sapp's intent was demonstrated because he was carrying a black gun while in the dark and while wearing a black jacket, "in such a way that the homeowner was not put on notice that [Sapp] was armed." *Id.* at 12.

In his reply, Sapp maintains that "just because the Officer may have had a heightened sense of awareness, it does not follow that he had to use extraordinary vision to see the firearm." Sapp's Reply Br. at 1. He contends that Detective Batten saw the handle immediately and identified it as a firearm with ordinary observation. He further argues that Gleaves was asked whether Sapp "brandished" a weapon, which, Sapp argues, means to "shake or wave (something, such as a weapon) menacingly" or "to exhibit in an ostentatious or aggressive manner." *Id.* at 2 (quoting Merriam-Webster (Revised Ed. 2022)). He argues that, beyond the brandishing question, Gleaves "did not testify at all regarding a possible firearm on [Sapp's] person." *Id.* at 3. Sapp further contends he was not Gleaves' adversary. Rather, he was at the wrong house.

In its Rule 1925(a) opinion, the trial court concluded the evidence was insufficient to support the conviction. It noted that Gleaves did not see Sapp brandish a firearm but did describe Sapp as wearing a "hoodie or something," and that Gleaves and Detective Batten described the area as very dark. It pointed out that Detective Batten did not describe what Sapp was wearing and that Detective Batten testified that as soon as Sapp faced him, the detective "saw a small portion of a handgun, specifically the handle, protruding out of [Sapp's] waistband, near his right pocket." Trial Court Opinion, filed Mar. 7, 2033, at 7. It noted the Detective testified that he was three to five feet away from Sapp when he saw the firearm, and that he was unable to see the barrel portion of the handgun. *Id.* The court pointed out that other than Gleaves'

testimony that Sapp was wearing a hoodie, there was no testimony regarding his clothing and that there was no testimony Sapp used his hoodie to conceal the firearm. It reasoned that "merely placing a firearm halfway in one's waistband does not give rise beyond a reasonable doubt there is intent to conceal." *Id.* It pointed out that Detective Batten was able to see the firearm with ordinary observation and immediately recognized it as a firearm. The court concluded that because the firearm could be seen with ordinary observation in the dark area a "citizen would have been put on notice that [Sapp] was carrying a firearm." *Id.*

When reviewing a sufficiency challenge, we "evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa.Super. 2019) (citation omitted). Evidence is sufficient where the Commonwealth has proven each element of the crime beyond a reasonable doubt. *Id.* at 337. The Commonwealth may meet its burden "by means of wholly circumstantial evidence." *Id.* (citation omitted). Additionally, the fact finder "is free to believe all, part, or none of the evidence." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011). This Court's standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Neysmith***, 192 A.3d 184, 189 (Pa.Super. 2018).

"Firearms not to be carried without a license," is defined, in relevant part, as:

> [A]ny person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1).

The Pennsylvania Supreme Court has held that a person "'carries a firearm concealed on or about his person' pursuant to Section 6106 when, viewed in the totality of the circumstances, he or she carries the firearm in such a manner as to hide the firearm from ordinary observation; absolute invisibility to others is not required." ***Montgomery***, 234 A.3d at 536. The court stated that "it is for the finder of fact to determine whether the evidence presented constitutes concealment for purposes of Section 6106." ***Id.*** at 538. Further, "to establish a violation of section 6106, the Commonwealth must establish that a defendant acted intentionally, knowingly or recklessly with respect to each element, including the concealment element." ***Commonwealth v. Scott***, 176 A.3d 283, 291 (Pa.Super. 2017) (quotation marks omitted). The Pennsylvania Supreme Court pointed out that the "prohibition on carrying an unlicensed concealed weapon serves to apprise citizens of the fact that an individual is carrying deadly force, thereby lessening the chance that such individual could take his adversary, or anyone else, at a fatal disadvantage." ***Montgomery***, 234 A.3d at 536.

In ***Montgomery***, the Court concluded that the Commonwealth had presented sufficient evidence at the preliminary hearing to give rise to a permissible inference that the defendant concealed his firearm. There, the firearm was partially tucked into the defendant's waistband and he evaded

police by retreating into a store. *Id.* at 537. When the officers observed him, he hid the firearm on a store shelf. *Id.* The court noted that at trial the defendant could offer evidence and argue that he did not intentionally conceal the firearm in his waistband and that the firearm discovered in the store was not his, and a jury could credit such facts. *Id.* at 538. It concluded that it was for the fact finder to determine whether the evidence constituted concealment. *Id.*

Here, the Commonwealth presented sufficient evidence to support the conviction. When describing Sapp's appearance, Gleaves did not state that she saw a firearm. And when asked if she had seen Sapp "brandish" a firearm, Gleaves stated she had not, and saying she saw a firearm elsewhere on his person would have been a natural response to the question. Viewed in the Commonwealth's favor, Gleaves' testimony in this regard supports the inference that the firearm was hidden "from ordinary observation." *Id.* at 536. Although Detective Batten noticed the firearm, the jury was free to conclude that he did not spot the gun "from ordinary observation," but rather as a police officer responding to an emergent situation, where he was on alert for danger. Further, he testified that only a small portion of the handle was visible, while the barrel was tucked into Sapp's waistband. The gun did not have to be utterly invisible. *See id.* The evidence here was sufficient for the jury to find the concealment element beyond a reasonable doubt.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>03/05/2024</u>