J-A09019-24

2024 PA Super 108

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAQUAY L. SEARS :
:
Appellant : No. 1379 WDA 2022

Appeal from the Judgment of Sentence Entered October 19, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008198-2021

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

OPINION BY KUNSELMAN, J.:                          **FILED: May 30, 2024**

Jaquay Sears appeals from the judgment of sentence entered following his fifteen non-jury convictions of neglect of animals.[1]  He challenges the sufficiency of the evidence and the legality of his sentence.  We affirm fourteen of Sears' convictions, reverse one, and remand for resentencing.

The evidence at Sears' trial established that on February 23, 2021, Gregory Grier went to a house he owned at 1336 Olivant Street in Pittsburgh. Grier saw five dogs chained in his back yard, although he had not given anyone permission to keep dogs there.  He contacted the police to remove the dogs.

Pittsburgh Animal Control Officer Diana Serpa and, later, Humane Society Police Officer Angela Fry responded, finding five dogs kept in poor condition in the icy yard.  The dogs were tied with heavy chains, lacked access

---

[1] 18 Pa.C.S.A. § 5532.

to food and water, and had small shelters with matted, wet straw. One dog, referred to as Dog 3, had a rounded belly. Officer Fry suspected that Dog 3 was pregnant or had a parasitic overload. Dog 3 had no other visible injuries.

Sears arrived as the officers were preparing to leave. Sears told Officer Fry that he was taking care of the dogs for his friend Eric Jackson. Sears put Jackson on speakerphone; Jackson said that Sears was caring for his dogs while he was in Erie. Officer Fry told Jackson that she was removing the dogs from the cold. Jackson never came to the shelter to retrieve the dogs.

Officer Fry removed the dogs and took them to Humane Animal Rescue of Pittsburgh. Dr. Eric Ledesma, a veterinarian, examined all five dogs. He determined that Dog 3 had old scars on her limbs and developed mammary glands. X-rays and an ultrasound showed that Dog 3 was pregnant. Further testing revealed that Dog 3 had ear and urinary tract infections, babesia, and anemia from hookworms and whipworms. Dr. Ledesma decided to spay Dog 3 to prevent complications. Dog 3 died during the procedure. With respect to Dog 3, Dr. Ledesma testified that the only condition he initially observed that required veterinary care was monitoring a possible pregnancy. The only sign of Dog 3's other conditions might have been lethargy, but Dr. Ledesma did not say he observed Dog 3 acting lethargic.

Following a non-jury trial on September 27, 2022, the trial court found Sears guilty of fifteen counts of neglect of animals. Two were misdemeanors: failing to provide veterinary care to Dogs 1 and 2. The rest were summary offenses: failing to provide veterinary care to Dogs 1, 2, and 3; failing to

provide sustenance and water to all five dogs; and failing to provide shelter to all five dogs.

On October 19, 2022, the trial court sentenced Sears to an aggregate term of two years of probation. For sentencing purposes, the court merged Sears' four convictions related to Dog 1 and four convictions related to Dog 2. It imposed separate sentences for Sears' three convictions related to Dog 3, two convictions related to Dog 4, and two convictions related to Dog 5.[2]

Sears timely appealed. Sears and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Sears presents three issues for review:

I. Whether the Commonwealth's evidence was insufficient to sustain any of Mr. Sears' convictions for Neglect of Animal where it failed to prove, beyond a reasonable doubt, that the animals in question were not provided their basic needs at the time in which Mr. Sears was responsible for the animals such that he had a duty of care to provide such needs?

II. Whether the Commonwealth's evidence was insufficient to sustain Mr. Sears' three summary convictions for Neglect of Animal—Failure to Provide Necessary Veterinary care under 18 Pa.C.S.A. § 5532(a)(3) where the Commonwealth failed to prove, beyond a reasonable doubt, that he neglected to provide necessary veterinary care to the dogs identified as numbers 3, 4, and 5?

_____

[2] For Dogs 1 and 2, Sears' sentence was six months of probation at Count 1 and Count 2 (listed as 90 days in the sentence order); the court merged Counts 4, 5, 8, 9, 13, and 14. For Dog 3, Sears' sentence was 90 days of probation each at Counts 6 and 15 and no further penalty at Count 10. For Dog 4, Sears' sentence was 90 days of probation at Count 11 and no further penalty at Count 16. For Dog 5, Sears' sentence was 90 days of probation at Count 12 and no further penalty at Count 17.

III.    Whether sentencing Mr. Sears for multiple counts of Neglect of Animal involving different dogs was illegal where the Commonwealth failed to establish that Mr. Sears committed more than a single prohibited act and the plain language of the statute provides only for a single unit of prosecution for each animal for which a person has a duty of care?

**See** Sears' Brief at 6; Sears' Supplemental Brief at 6.

## I.    Sufficiency – All Convictions

Sears first challenges the sufficiency of the evidence to sustain his convictions.  We thus review "whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction[s] beyond a reasonable doubt."  **Commonwealth v. Fallon**, 275 A.3d 1099, 1105 (Pa. Super. 2022) (quoting **Commonwealth v. Feliciano**, 67 A.3d 19, 23 (Pa. Super. 2013) (*en banc*)).  A sufficiency claim fails if the evidence, including circumstantial evidence, is sufficient for the trier of fact to find every element of the crime.  **Id.**  However, "mere suspicion or speculation" is not sufficient to sustain a conviction.  **Commonwealth v. Winters**, 362 A.2d 297, 301 (Pa. Super. 1976) (citing **Commonwealth v. Simpson**, 260 A.2d 751 (Pa. 1970)).

The "Neglect of animal" statute provides:

**(a) Offense defined.--**A person commits an offense if the person fails to provide for the basic needs of each animal to which the person has a duty of care, whether belonging to himself or otherwise, including any of the following:

(1)  Necessary sustenance and potable water.

(2)  Access to clean and sanitary shelter and protection from the weather.  The shelter must be sufficient to permit the animal to retain body heat and keep the animal dry.

(3) Necessary veterinary care.

**(b) Grading.**--

(1) Except as set forth in paragraph (2), a violation of this section is a summary offense.

(2) If the violation causes bodily injury to the animal or places the animal at imminent risk of serious bodily injury, a violation of this section is a misdemeanor of the third degree.

18 Pa.C.S.A. § 5532.

Sears argues there was no evidence that, after he assumed a duty of care, he failed to provide food, water, shelter, and veterinary care to the five dogs in Grier's yard. The trial court reasoned that the statute did not require proof that the neglect occurred while the dogs were in Sears' care. Sears warns that such a reading renders Section 5532 a strict liability law, which is inconsistent with legislative purpose.[3]

Here, the evidence was sufficient to establish that Sears failed to provide for the basic needs of the five dogs while they were in his care. Sears told Officer Fry that he was taking care of the dogs for his friend. Jackson confirmed this on speakerphone and said that he was two hours away in Erie. Considering the evidence in a light most favorable to the Commonwealth, it is reasonable to infer that Sears had been caring for the dogs for at least the two hours it had taken Jackson to drive to Erie. This was ample time for Sears

---

[3] This Court has held that Section 5532 requires a mental state of recklessness when charged as a misdemeanor but requires no proof of culpability as a summary offense. ***In re Animal Outlook***, 271 A.3d 516, 522 (Pa. Super. 2022), *order vacated on a different basis*, 298 A.3d 37 (Table) (Pa. 2023).

to have observed that the dogs were neglected and to provide their basic needs.[4]  Therefore, Sears' first sufficiency challenge fails.

## II. Sufficiency – Failure to Provide Veterinary Care for Dog 3

Sears next argues that there was no evidence that he failed to provide necessary veterinary care to Dog 3.  (Sears claims the same for Dogs 4 and 5, but he was not convicted of failing to provide veterinary care for those dogs.)  Sears argues that this conviction cannot stand because Dog 3 had not shown any conditions that required veterinary care.  We agree.

Neglect of animals includes a defendant's failure "to provide for the basic needs of" an animal in his care, including the basic need of "[n]ecessary veterinary care."  18 Pa.C.S.A. § 5532(a)(3).  "Necessary" means "absolutely needed" or "of an inevitable nature."  *Commonwealth v. Lehman*, 243 A.3d 7, 17 (Pa. 2020) (dictionary citation omitted).

Here, Dr. Ledesma's testimony about his initial observations of Dog 3 did not establish that veterinary care was necessary:

> Q. During your initial assessment of Dog No. 3 and [the x-rays and ultrasound], did any of the conditions presented in your opinion require veterinary care?
>
> A. In her case?

---

[4] Additionally, a presumption of neglect under Section 5532 arises for a dog tethered out of doors and unattended when there is "(i) Excessive waste or excrement in the area where the dog is tethered[,] (ii) Open sores or wounds on the dog's body[, or] (iii) The use of a tow or log chain, or a choke, pinch, prong or chain collar."  18 Pa.C.S.A. § 5536(a)(2).  All three conditions were present here.

Q. Yes.

A. If she was pregnant, just monitoring at the time. She had old scars that did not need any medical attention at this point, but we did run diagnostics on her. We run diagnostics on all of our forensic cases just to make sure we're not missing anything.

N.T., 9/27/22, at 55. It was not until Dr. Ledesma's subsequent testing that he found that Dog 3 had other infections, parasites, and conditions requiring veterinary care. *Id.* at 57. The only outward sign of these conditions is lethargy; however, Dr. Ledesma did not testify that Dog 3 was lethargic, and a stranger to a dog might not recognize a change in her demeanor. *Id.* at 64.

These facts cannot sustain Sears' conviction under Section 5532(a)(3) with respect to Dog 3. Monitoring Dog 3's suspected pregnancy was not "absolutely needed" or "inevitable" care. *Lehman*, *supra*. And other than her rounded belly and developed mammary glands, there was no evidence that Dog 3 had any external signs of her internal conditions. Absent any signs that Dog 3 needed veterinary care, Sears was not required to procure testing to diagnose any other conditions while he was taking care of Dog 3. Such an undertaking would exceed the basic needs that the statute requires a caretaker to provide.[5]

Accordingly, we reverse Sears' conviction for failing to provide necessary veterinary care for Dog 3.

---

[5] By contrast, Dogs 1 and 2 had open wounds and showed signs of distress. Thus, the evidence supported Sears' convictions for failing to provide veterinary care for these two dogs.

### III.  Legality of Sentence – Multiplicity

In his final issue, Sears challenges the trial court's failure to merge certain convictions for sentencing.[6]  Sears received separate sentences for his convictions related to Dogs 3, 4, and 5.  Sears contends that, based on the statute, he could be sentenced only once per animal.[7]  The Commonwealth responds that the trial court could sentence Sears separately for each need Sears failed to provide to each dog.  We agree with the Commonwealth.

Our task is to determine the "unit of prosecution" for a violation of Section 5532, *i.e.*, the criminal action that the General Assembly intended to punish.  **Commonwealth v. Satterfield**, 255 A.3d 438, 445–46 (Pa. 2021).  We determine legislative intent by first construing a statute's words "according to rules of grammar and according to their common and approved usage."  **Id.** 446 (citing 1 Pa.C.S.A. § 1903(a)).

For example, in **Satterfield**, the Supreme Court of Pennsylvania considered a multiplicity challenge under Section 3742(a) of the Vehicle Code, which requires drivers involved in certain vehicle accidents to stop, render aid, and provide required information.  **Id.** at 446.  Based on the statutory text,

---

[6] Sears raised this issue for the first time in a supplemental brief filed after his case was continued from an earlier argument list.  Because the issue concerns the legality of sentencing, it cannot be waived.  **Commonwealth v. Sheets**, 302 A.3d 145, 152 n.4 (Pa. Super. 2023).

[7] A determination of guilt without further penalty is a separate sentence.  42 Pa.C.S.A. § 9723; **see Commonwealth v. Samuels**, 511 A.2d 221, 236 (Pa. Super. 1986) (distinguishing merging a count for sentencing purposes and imposing a sentence of guilty without further penalty).

the unit of prosecution is the act of leaving the scene of an accident without first rendering aid and providing the required information. *Id.* at 447. The prohibited action does not depend on the result of the accident; therefore, a driver who left the scene of an accident with three victims could be sentenced only once under Section 3742(a). *Id.* at 451.

Another example of a multiplicity challenge arose under Section 6312(d) of the Crimes Code, prohibiting the possession of "any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction, or other material depicting" child pornography. *Commonwealth v. Davidson*, 938 A.2d 198, 207 (Pa. 2007) (quoting 18 Pa.C.S.A. § 6312(d)). The Supreme Court of Pennsylvania ruled that the unit of prosecution was possession of each depiction, which the General Assembly intended to be "a discrete and separate criminal act." *Id.* at 218–21. The court held that the term "any," followed by a list of singular items, meant that each item gave rise to a distinct violation. Thus, the defendant could be sentenced for each depiction he possessed, despite his argument that he had committed only a single act of "possession." *Id.* at 221.[8]

Here, we construe Section 5532 to authorize separate punishments for each failure to provide one of the enumerated basic needs to an animal. When a person owes a duty of care to an animal, the failure to provide "any" of the

---

[8] The General Assembly amended Section 6312(d), including language that a person "commits an offense" by possessing child pornography; the court noted that the amendments did not affect the issues before it. *Commonwealth v. Davidson*, 938 A.2d 198, 207 n.6 (Pa. 2007).

three listed needs is "an offense." *Id.* As in *Davidson*, the word "any" before the list of needs suggests that the failure to provide each need to an animal in one's care gives rise to a separate offense.[9] This is consistent with a legislative purpose to protect against the deprivation of different needs.

Therefore, Sears' challenge to the legality of his sentence fails. However, because our reversal of one conviction can upset the trial court's sentencing scheme, we vacate all of Sears' sentences and remand for resentencing on the remaining fourteen convictions. *Commonwealth v. Steele*, 234 A.3d 840, 848 (Pa. Super. 2020).

Conviction reversed at Count 6 (failure to provide necessary veterinary care to Dog 3 under 18 Pa.C.S.A. § 5532(a)(3)). Remaining convictions affirmed. Judgment of sentence vacated. Remanded for resentencing. Jurisdiction relinquished.

Judge Dubow joins.

Judge Nichols concurs in result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/30/2024

---

[9] Also as in *Davidson*, the statutory phrase "an offense" does not prohibit separate punishments for distinct violations. *See* Note 8, *supra*.