J-S39025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HONRI JOSEPH MORGAN | : | |
| | : | |
| Appellant | : | No. 810 WDA 2023 |

Appeal from the Judgment of Sentence Entered April 20, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0006604-2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: MARCH 19, 2025**

Honri Morgan appeals from the judgment of sentence imposed after he was found guilty of carrying a firearm in a vehicle without a license[1] and other offenses.  He challenges the sufficiency of the evidence to prove his possession of a rifle in a duffel bag in the trunk of the car he was driving.  We reverse.

The trial court detailed the factual history:

> On September 2, 2022, Officer Ryan Johnston of the City of Duquesne Police Department was monitoring traffic in the city of Duquesne.  Officer [Johnston] testified that he had extensive experience in micro-facial expression, drug recognition and firearms recognition having been a police officer for almost ten years.  While positioned near Duquesne Boulevard and Spring Avenue, he observed a blue Subaru automobile travelling north on Duquesne Boulevard.  The vehicle had an inoperable headlight and Officer Johnston observed the driver slouched down and back concealing himself behind the pillar between the front and rear driver's side windows.  Based on his training and experience, Officer Johnston suspected the driver was trying to conceal

---

[1] 18 Pa.C.S. § 6106(a)(1).

himself from Officer Johnston.  As the Subaru passed him, Officer Johnston pulled his vehicle onto Duquesne Boulevard and followed it.  He attempted to run the registration of the vehicle but there was a cover preventing him from reading the registration number.  The speed of the Subaru also dropped significantly to 28 miles per hour in a 35 mile per hour zone.  Officer Johnston activated his overhead lights and initiated a traffic stop.

Immediately upon being pulled over, [Morgan], who was driving the vehicle, lifted his cell phone and began making a call.  Officer Johnston approached [Morgan] from the driver's side window and requested his driver's license and other documents.  [Morgan] told Officer Johnston that he did not have a driver's license.  [Morgan's] hands were trembling uncontrollably.  Officer Johnston smelled the odor of fresh marijuana coming from the vehicle.  [Morgan] immediately began making small talk with Officer Johnston about a prior incident where [Morgan] was present at the scene when an acquaintance of [Morgan] was arrested.  [Morgan] told Officer Johnston that he really had to get the vehicle back to his girlfriend.  Officer Johnston confirmed that the registration for the vehicle was expired.  Officer Johnston made the determination that [Morgan] could not drive the vehicle due to his lack of a driver's license so he asked [Morgan] to exit the vehicle.

Officer Johnston asked [Morgan] if he had any weapons on his person.  [Morgan] responded that he did have a firearm in his pocket.  When asked if he had a permit to carry the weapon, [Morgan] responded that he did not.  [Morgan] was then placed under arrest.  Another officer who had responded to the scene removed the firearm from [Morgan's] pocket.  [Morgan] was placed in a police vehicle and Officer Johnston then inventoried [Morgan's] vehicle.  Officer Johnston recovered a rifle and a magazine loaded with ammunition in a duffle bag in the trunk.  [Morgan] told Officer Johnston that the rifle was not his but belonged to his girlfriend's brother.  The officer recovered a small amount of marijuana from a pocket in the driver's door.  The other officer found crack cocaine and marijuana on [Morgan's] person.  The rifle recovered from the vehicle measured 24 inches.

Trial Court Opinion, 1/17/24, at 1–3 (formatting altered).

Morgan appeared for a suppression hearing on January 19, 2023; the trial court denied suppression.  The parties stipulated to a non-jury trial based

on Officer Johnston's suppression testimony, the affidavit of probable cause,[2] and exhibits (including a firearm report). The trial court found Morgan not guilty of the charges relating to the firearm in Morgan's pocket,[3] but guilty of carrying the rifle without a license, and guilty of drug and vehicle offenses.

On April 20, 2023, the trial court sentenced Morgan to three years and six months to seven years of confinement. Morgan filed post-sentence motions, which the trial court denied. Morgan timely appealed. As directed by the trial court, Morgan filed a timely concise statement of errors complained of on appeal. The trial court subsequently entered an opinion in support of Morgan's judgment of sentence.

On appeal, Morgan challenges the sufficiency of the evidence to prove two of the elements required to sustain his Section 6106(a)(1) firearm

_____

[2] Officer Johnston averred that an inventory of the vehicle revealed a "GSG-16 .22LR long rifle in an open black duffle bag in the trunk" and a "black magazine loaded with .22LR rounds under clothes in the same duffle bag."

> Also within the bag were a pair of men's converse shoes, and a tan pair of men's Levi tan colored pants with paint stains. Sgt. Vroman advised me that Morgan stated the rifle is someone else's. I went and spoke with Morgan who stated the rifle I pulled out of the trunk belongs to his girlfriend's brother, a Michael Wilson, as he believes is his name, but Morgan was unaware such was in the trunk. Dispatch reported that said rifle is not registered to anyone.

Affidavit, 9/2/22, at 3. The affidavit also provided that the firearm in Morgan's pocket had been reported as stolen.

[3] The trial court determined that the Commonwealth did not meet its burden of proof with respect to these offenses. *See* N.T., 1/19/23, at 69–72.

conviction: that he was aware of the rifle in the trunk and that the rifle had an overall length of less than 26 inches.

This Court's review of a sufficiency challenge adheres to the following:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Webber*, 306 A.3d 921, 925–26 (Pa. Super. 2023) (quoting *Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023)).

Morgan was convicted under Section 6106(a)(1) of the Uniform Firearms Act, which prohibits (as applied here) carrying a firearm in a vehicle without a valid and lawfully issued license. 18 Pa.C.S. § 6106(a)(1). Section 6106 requires proof "that a defendant acted 'intentionally, knowingly or recklessly' with respect to each element." *Commonwealth v. Scott*, 176 A.3d 283, 291 (Pa. Super. 2017). To show that a defendant possessed a firearm not located

on his body, the Commonwealth may show "constructive possession" with proof that he had the "power and intent to control" the firearm:

> Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

> To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the appellant . . . and may be found in one or more actors where the item in issue is in an area of joint control and equal access.

*Commonwealth v. Muhammad*, 289 A.3d 1078, 1091 (Pa. Super. 2023), *appeal granted, other issue*, 308 A.3d 766 (Pa. 2023). Notably, "a defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items." *Commonwealth v. Parrish*, 191 A.3d 31, 37 (Pa. Super. 2018).

Possession, constructive or otherwise, requires proof that a defendant is aware of his control of the item that he is possessing. 18 Pa.C.S. § 301(c). A defendant's knowledge of the presence of an item "is a necessary predicate to a finding of intention to exercise control" of the item. *Commonwealth v.*

- 5 -

*Townsend*, 237 A.2d 192, 194 (Pa. 1968).  Thus, in *Townsend*, where there was no evidence that a passenger in a car knew that there were multiple guns in the car, the evidence was insufficient to sustain his conviction for possessing the guns.  *Id.* at 195; *see also Commonwealth v. Chenet*, 373 A.2d 1107, 1109 (Pa. 1977) (holding evidence insufficient to prove that a defendant knew about two marijuana cigarettes in the center console of a car that the defendant had picked up to repair).[4]

Here, the stipulated evidence established that Morgan was driving a car with a rifle in the trunk.  However, there is no evidence, viewed in a light most favorable to the Commonwealth, from which it is reasonable to infer that Morgan was aware of the rifle's presence in the trunk prior to the traffic stop.  That is, the totality of the circumstances presented to the trial court gives an insufficient basis to find that Morgan intended to control the rifle, as is required to prove constructive possession.  We consider the following facts that the trial court identified in support of its verdict.

_____

[4] The Dissent would distinguish *Chenet* because in that case, the defendant had a "business relationship" with the owner of the car, whereas Morgan had a personal relationship with his paramour.  However, the Supreme Court did not draw this distinction and instead grounded its holding in the lack of evidence that the defendant "knew about and was in possession of" contraband "found in a third party's car."  *Chenet*, 373 A.2d at 1109.

Here, as in *Chenet*, there was no evidence from which the trial court could reasonably infer that Morgan knew about and possessed the rifle in a third party's car.  Because the circumstantial evidence, such as Morgan's extreme nervousness, is equally as consistent with his possession of the firearm *in his pocket*, linking Morgan's behavior to the rifle *in the trunk* is speculation.

- 6 -

Before the traffic stop, Morgan tried to hide himself when he recognized police presence. During the stop, Morgan trembled and tried to make small talk. As the trial court recognized, these behaviors can show consciousness of guilt. However, Morgan was undoubtedly aware of the illegal drugs and stolen firearm that he had on his body. It is speculation to infer that Morgan's concealment and nervousness stemmed from the rifle in the trunk rather than from the contraband in his clothing.[5] Morgan's actions before and during the stop, which could show his knowledge of multiple other offenses, are insufficient to prove that he knew that there was a rifle in the trunk of the car.

At some time during the stop, Morgan volunteered that the rifle in the trunk belonged to his girlfriend's brother. The trial court reasoned that this statement "acknowledged familiarity with the rifle." However, knowing whom the rifle belonged to does not prove that Morgan knew that the rifle was in the car before the police discovered it. The stipulated record does not indicate that Morgan gave this statement before the police inventory. Unlike the firearm in his pocket, there is no evidence that Morgan identified the rifle before the police found it. Again, there was no evidence to fill the inferential

_____

[5] It appears ironic that Morgan's behavior does not show his guilt of one crime because he was simultaneously committing other crimes. However, Morgan was also prosecuted for the other crimes. Due process demands that Morgan's guilt at the challenged count not be assumed only from his other bad acts and that his conviction be supported by more than speculation. Accepting Officer Johnston's suspicion that Morgan was nervous because of "more" than "a little [bit] of marijuana," N.T., 1/19/23, at 32, it remains at least as likely that Morgan was trembling because he was aware of the stolen gun in his pocket.

- 7 -

gap to prove that Morgan's statement about the rifle after it was found meant that he knew he had been driving with it.

Further, Morgan was the sole occupant of the car at the time of the stop. This, too, could negate a claim that someone else possessed the duffel bag in the trunk. However, the Commonwealth offered no evidence of who owned the car or placed the duffel bag in the trunk, beyond Morgan's own statement that he had to get the car back to his girlfriend. As in **Chenet**, there was no evidence that the person driving someone else's car had the intent to control the contraband in the car, especially in the trunk.

In sum, the totality of the circumstances does not provide a sufficient basis to infer that Morgan was aware of the rifle in the trunk, and thus that he had the intent to control it. **Townsend**, 237 A.2d at 194. The evidence is therefore insufficient to sustain Morgan's conviction for carrying a firearm in a vehicle without a license. We reverse the conviction and vacate Morgan's sentence at this count. Mindful that doing so might disturb the sentencing scheme, we vacate the remainder of Morgan's judgment of sentence and remand for resentencing. **Commonwealth v. Sears**, 317 A.3d 633, 639 (Pa. Super. 2024). Based on our disposition of Morgan's first issue, we need not address his second issue.

Conviction reversed at Count 3. Judgment of sentence vacated. Remanded for resentencing. Jurisdiction relinquished.

Judge Dubow joins. Judge Nichols files a Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>3/19/2025</u>