J-S13038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER ANDREW BERRIOS | : | |
| | : | |
| Appellant | : | No. 1686 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 16, 2024
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000699-2023

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED JUNE 17, 2025**

Appellant Christopher Andrew Berrios appeals from the judgment of sentence imposed after a jury convicted him of five counts of neglect of animals.[1] Appellant's counsel (Counsel) has filed a petition to withdraw and an **Anders**/**Santiago** brief.[2] After review, we grant Counsel's petition to withdraw and affirm Appellant's judgment of sentence.

On March 30, 2023, Appellant was charged with two counts of aggravated cruelty to animals – causing serious bodily injury or death and seven counts of neglect of animals. The case proceeded to a jury trial, which was held on June 10, 2024.

---

[1] 18 Pa.C.S. § 5532(a)(1).

[2] **Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

The notes of testimony from Appellant's jury trial establish the underlying facts as follows:

Appellant and his wife, Samantha Berrios, began breeding dogs at their home in St. Clair Township sometime before 2022. N.T. 6/10/24 at 73-74, 136. The Berrios' dogs were all registered to Ms. Berrios, but Appellant was also responsible for the care of the dogs and took a lead role in breeding and selling the animals. *Id.* at 74, 76-78. On August 22, 2022, Appellant and Ms. Berrios got into an altercation. *Id.* at 79, 104. As a result, Ms. Berrios moved into her sister's apartment with the couple's children and one of the dogs. *Id.* at 43-44, 79-80, 160. At the time Ms. Berrios moved out, Appellant and his wife had eight dogs. *Id.* at 73.

On October 24, 2022, Appellant messaged Ms. Berrios and stated that one of the dogs, "Tiny," had died. *Id.* at 83-84. Ms. Berrios expressed concern and asked if Appellant was still able to care for the dogs. *Id.* at 84-85. Appellant responded that he was feeding the dogs every day. *Id.*

On November 15, 2022, Ms. Berrios was contacted by a former neighbor who informed her that another dog, "Ma'dusa," was tied up on the back porch of the property where she formerly lived with Appellant, and that Ma'dusa was unable to move and appeared thin. *Id.* at 86. Ms. Berrios had a friend go to the property, remove Ma'dusa, and bring Ma'dusa to her. *Id.* at 86-87. Once Ma'dusa was back at Ms. Berrios' home, Ms. Berrios' grandmother began contacting authorities due to concern for the other dogs at the property. *Id.* at 87. However, Ms. Berrios' grandmother was initially unable to contact

humane officers, the SPCA, or an animal shelter. *Id.* The grandmother successfully contacted Humane Society Police Officer Dana Mansell via Facebook message on the night of November 16, 2022. *Id.* at 28-29, 87.

The following day, November 17, Officer Mansell went to the property. *Id.* at 29-30. When she arrived, she knocked on the door and heard some barking, but no one answered the door. *Id.* at 29. Moments later, an unidentified man came from across the street, entered the property, and came out with two puppies. *Id.* at 30. Officer Mansell noticed that the puppies had swollen abdomens, which, based on her training, she attributed to either worms or bloating due to lack of food. *Id.* at 32. She approached the man to determine who he was and called the St. Clair Police Department to assist her. *Id.* at 32-33. Police arrived and, shortly thereafter, Ms. Berrios arrived at the property. *Id.* at 33, 88. Ms. Berrios, who no longer had a key to the property, told police she was the property owner and assisted Officer Mansell in making entry by breaking down the back door. *Id.* at 33-34, 41, 88.

Upon entering the home, Officer Mansell noticed the smell of fecal matter, urine, ammonia, and decaying flesh. *Id.* at 34. Upon further investigation, Officer Mansell identified four dogs in various stages of health.[3] *See id.* at 34-40, 45-55. A dog identified by Ms. Berrios as Tiny was found

_____

[3] Four dogs had been removed from the home at the time that Officer Mansell entered the property. As previously mentioned, Ma'dusa and the two puppies had been removed from the property prior to entry. N.T., 6/10/24, at 30, 37-38, 86-87. As stated above, Ms. Berrios brought a fourth dog, "Butterball," with her when she moved out of the property in August 2022. *Id.* at 43-44, 80, 160.

dead in a cage surrounded by garbage, fecal matter, vomit, and empty dishes. *Id.* at 35. Officer Mansell described Tiny's body as "a mere skeleton with flesh and fur over it" and stated that all the dishes around Tiny's body were devoid of any type of sustenance. *Id.* at 35. In a crate next to Tiny was a dog identified as "Blush." *Id.* at 36-37. Blush was alive but was extremely thin and had very little energy left. *Id.* at 37. Two more dogs, "Joe Dirt" and "Baby," were found upstairs in a bedroom that was covered in trash and fecal matter. *Id.* at 37-38. These dogs also appeared malnourished, and Officer Mansell noted a lack of any food or water in the room. *Id.* at 38.

At the conclusion of trial, the jury found Appellant guilty of five counts of neglect of animals. These counts related to Tiny, Blush, Joe Dirt, Baby, and Ma'dusa. *See id.* at 201-02. On August 16, 2024, Appellant was sentenced to one to twelve months' incarceration for one count of neglect of animals followed by consecutive sentences of one to two months' incarceration for the remaining four counts, which brought Appellant's aggregate sentence to five to twenty months' incarceration. Defendant filed timely post-sentence motions, which the trial court denied on October 16, 2024.

Appellant filed a timely notice of appeal. The trial court directed Appellant to file a statement of errors pursuant to Pa.R.A.P. 1925(b) on November 18, 2024. Counsel filed a notice of intent to file an *Anders*/*Santiago* brief, pursuant to Pa.R.A.P. 1925(c)(4), on December 9, 2024. Appellant did not file a *pro se* response. The trial court filed a 1925(a) opinion on December 9, 2024.

- 4 -

In the ***Anders***/***Santiago*** brief, Counsel concluded that there are no non-frivolous issues. ***See Anders***/***Santiago*** Brief at 2-4, 14. Additionally, Counsel noted several meritless claims he identified from his review of the record. ***See id.*** at 10-16. These include a sufficiency of the evidence claim, a sentencing claim, a claim regarding the Commonwealth's amendment of the criminal information, a claim challenging testimony regarding the two puppies' dehydration symptoms, and a claim regarding the trial court's denial of a motion for acquittal as to the felony count for causing Tiny's death. ***See id.***

"When faced with a purported ***Anders***[/***Santiago***] brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." ***Commonwealth v. Wimbush***, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). Counsel must comply with the technical requirements for petitioning to withdraw by (1) filing a petition for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) providing a copy of the brief to the appellant; and (3) advising the appellant of the right to retain private counsel, proceed *pro se*, or raise additional arguments that the appellant considers worthy of the court's attention. ***See Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). In an ***Anders***/***Santiago*** brief, counsel must set forth the issues that the defendant wishes to raise and any other claims necessary to effectuate appellate presentation of those issues. ***Commonwealth v. Millisock***, 873 A.2d 748, 751 (Pa. Super. 2005).

Additionally, counsel must file a brief that meets the requirements established in **Santiago**, namely:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Goodwin**, 928 A.2d at 291 (citation omitted). This includes "an independent review of the record to discern if there are any additional, nonfrivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citation and footnote omitted); **accord Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Here, Counsel has complied with the procedural requirements for seeking withdrawal. Counsel has filed a petition to withdraw, he has sent Appellant a letter explaining Appellant's appellate rights, he has informed Appellant of his right to proceed *pro se* or with private counsel, and he has supplied Appellant with a copy of the **Anders**/**Santiago** brief. **See Goodwin**,

928 A.2d at 290. Counsel provided this Court with a copy of his letter to Appellant informing him of his rights.

Furthermore, Counsel's *Anders*/*Santiago* brief complies with the requirements of *Santiago*. Counsel has included a summary of the relevant facts and procedural history, refers to portions of the record that might arguably support Appellant's claims, and sets forth the conclusion that the appeal is frivolous. *See Santiago*, 978 A.2d at 361. Accordingly, Counsel has met the technical requirements of *Anders* and *Santiago*. We now proceed to address the issues identified in the *Anders*/*Santiago* brief.

In the *Anders*/*Santiago* brief, Counsel identifies a claim that Appellant directed him to raise on appeal as well as four potential claims that Counsel identified based on his review of the record, which he ultimately determined were meritless. *See Anders*/*Santiago* Brief at 10-16. First, Counsel analyzes the sufficiency of the evidence and concludes that claim lacks arguable merit. *Id.* at 10-13. Second, Counsel discusses why a sentencing claim would lack arguable merit. *Id.* at 14-15. Third, Counsel discusses why a challenge to the trial court's grant of the Commonwealth's motion to amend would be meritless. *Id.* at 15. Fourth, Counsel explains why a challenge to an evidentiary ruling would be meritless on appeal. *Id.* Finally, Counsel addresses why a challenge to the trial court's denial of Appellant's motion for acquittal would be meritless. *Id.* We address each potential claim below.

## Sufficiency of the Evidence

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Wright*, 255 A.3d 542, 552 (Pa. Super. 2021) (citation omitted and formatting altered). "Importantly, the fact finder, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* (citation omitted and formatting altered).

A person commits the offense of neglect of an animal if the person fails to provide for the basic needs of each animal to which the person has a duty

of care, whether belonging to himself or otherwise, including by failing to provide: 1) necessary sustenance and potable water; 2) access to clean and sanitary shelter and protection from the weather; and/or 3) necessary veterinary care. *See Commonwealth v. Sears*, 317 A.3d 633, 636 (Pa. Super. 2024); 18 Pa.C.S. § 5532.

Here, Appellant was convicted of five counts of neglect of animals in relation to the dogs named Tiny, Blush, Joe Dirt, Baby, and Ma'dusa. *See* N.T., 6/10/24, at 201-02. The Commonwealth established that Appellant had a duty of care for all five dogs. Ms. Berrios testified that she and Appellant had the dogs in order to breed them. *Id.* at 73-74. Ms. Berrios also testified that Appellant took a lead role in the breeding operation. *Id.* at 74, 76-78. Ms. Berrios also testified that she moved out of the Berrios' home, where the dogs were kept and later found in poor health, on August 22, 2022. *See id.* at 79. She stated that she did not reenter the home until November 17, 2022 when she met Humane Officer Dana Mansell there. *See id.* at 82-83. Ms. Berrios testified that, at that time, she did not even have a key to the residence, and she had to break the door down to enter the property. *Id.* at 88. This testimony was corroborated by Officer Mansell, who was there when Ms. Berrios broke the door down to gain entry. *Id.* at 34.

There was also evidence presented suggesting Appellant was the only one with access to the property where the dogs were kept and that he was responsible for the dogs' care. Ms. Berrios stated that Appellant changed the locks after she moved out. *Id.* at 88. On October 24, 2022, Appellant notified

Ms. Berrios that Tiny had died. *Id.* at 83-85. Ms. Berrios asked Appellant if he was still able to care for the dogs in her stead. *Id.* Appellant's response suggested that he knew he was responsible for the dogs' care as he told Ms. Berrios that he was still feeding the dogs. *Id.*

As to Appellant's neglect of the animals, the Commonwealth presented significant testimony and evidence showing the condition of the dogs. Tiny was found dead in a cage surrounded by fecal matter and empty dishes devoid of food and water. *See* N.T., 6/10/24, at 35, 47, 49-50, 53-55. Officer Mansell testified that Tiny's body was simply just fur and skin over a skeleton and that the dog's eyes and organs had wasted away from starvation. *See id.* at 35, 53-55. Dr. Broshkevitch, a veterinarian, similarly described Tiny's body as "essentially skin over top of a skeleton" and stated "[t]here wasn't even any muscle left." *Id.* at 57-58, 68-69. Blush was found near death from starvation in a cage next to Tiny's body that was similarly covered with fecal matter and devoid of any food or water. *Id.* at 35-37, 49, 50-52. Dr. Broshkevitch testified that he examined Blush and diagnosed her with starvation and dehydration. *Id.* at 60-68. Joe Dirt and Baby were found in a bedroom covered in fecal matter without food and water. *Id.* at 37-39. While Joe Dirt and Baby were not as severely gaunt as Blush, Officer Mansell testified that these dogs were also malnourished. *See id.* at 38. The Commonwealth presented evidence showing Ma'dusa had been neglected as well. While Ma'dusa was removed from the property the day before Officer Mansell arrived, Ms. Berrios testified that she had Ma'dusa removed after a neighbor

reported Ma'dusa was tied up and unable to move on the back porch and appeared to be "all skin and bones." ***Id.*** at 86-87. Ms. Berrios' friend, who removed Ma'dusa from the property, also described Ma'dusa as "skin and bones" and noted that Ma'dusa had lost over one hundred pounds since he saw the dog a month prior to removing her from the property. ***Id.*** at 156. Finally, Officer Mansell testified that in her entire time at the property she did not see any sources of food or water for any of the dogs. ***Id.*** at 41.

All of the evidence stated above established that Appellant had a duty of care for the dogs and that he failed to provide the dogs with necessary food and water. Accordingly, the evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to convict the Appellant of all five counts of neglect of animals. ***See Sears***, 317 A.3d at 636; ***Wright***, 255 A.3d at 552. Therefore, Appellant is not entitled to relief on this claim.

### Sentencing

Next, Counsel identifies why a potential sentencing claim would fail stating:

> With regards to his sentencing [Appellant] had a prior record score of one from three prior misdemeanors. Each of the current misdemeanor 3 counts has an offense gravity score of one. So each count had a guideline range of R.S. to 1 month. [The trial court] sentenced [Appellant] to [] 1 to 12 months and four consecutive 1 to 2 month terms of incarceration in Schuylkill County Prison. Each of these constituted a standard guideline sentence. Further, "It is well-settled that, in imposing sentence, a trial judge has the discretion to determine whether, given the facts of a particular case, a given sentence should be consecutive to, or concurrent with, other sentences being imposed." ***Commonwealth v. Rickabaugh***, 706 A.2d 826, 847 (Pa. Super.

- 11 -

Ct. 1997). [The trial court] indicated that [it] believed the facts of this case warranted consecutive sentence.

*Anders*/*Santiago* Brief at 14-15 (some formatting altered).

Based upon our independent review of the record, we agree with Counsel's determination that a sentencing claim would be frivolous. We discern no viable challenge to the legality of Appellant's sentence. Appellant was sentenced within the statutory limits for each offense, there were no mandatory minimum sentences applicable to Appellant's convictions, and, because Appellant posted bail, there was no pre-trial detention for which the trial court could give him credit for time served.

As to any possible challenges to the discretionary aspects of Appellant's sentence, as this court has explained, "[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence[,]" even in the *Anders*/*Santiago* context. *Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015) (citations omitted). Before reaching the merits of such claims we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the Sentencing Code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted and some formatting altered).

- 12 -

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the trial court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a).

Here, Appellant did not file a post-sentence motion challenging his sentence and did not raise any sentencing issues during the sentencing hearing. *See* Post-Sentence Mot., 8/26/24; N.T. Sentencing H'rg, 8/16/24. Because no challenge to the discretionary aspects of sentencing was raised in the trial court, the issue is waived and, therefore, frivolous. *See Malovich*, 903 A.2d at 1251; Pa.R.A.P. 302(a); *see also Commonwealth v. Cook*, 175 A.3d 345, 349 (Pa. Super. 2017) (stating that where a discretionary sentencing claim is not preserved, it is waived and, therefore, frivolous on direct appeal, even in the *Anders*/*Santiago* context). Accordingly, we agree with Counsel's determination that there are no non-frivolous challenges to Appellant's sentence.

### Amendment to the Criminal Information

Next Counsel identifies a meritless challenge to the Commonwealth's amendment of the criminal information, stating that:

> [The trial court] denied [Appellant's] objection to amending the criminal information three days before the jury trial to extend the time frame of the neglect. However, she specifically allowed the Defense the opportunity to present alibi witnesses relevant to the time in question which were not previously disclosed.

***Anders*/*Santiago*** Brief at 15 (citations omitted).

We review a trial court's decision to grant or deny a motion to amend an information for an abuse of discretion. ***See Commonwealth v. Small***, 741 A.2d 666, 681 (Pa. 1999). As we have explained,

> [a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. Belknap***, 105 A.3d 7, 10 (Pa. Super. 2014) (citations omitted and some formatting altered).

Rule 564 of the Pennsylvania Rules of Criminal Procedure provides as follows:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

"[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." ***Commonwealth v. Sinclair***, 897 A.2d 1218, 1221 (Pa. Super. 2006) (citation omitted). "[O]ur courts apply the rule with an eye toward its

- 14 -

underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of [the] procedural rules." ***Commonwealth v. Grekis***, 601 A.2d 1284, 1289 (Pa. 1992).

When presented with a question concerning the propriety of an amendment, we consider:

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amend[ment] is not permitted.

***Commonwealth v. Mentzer***, 18 A.3d 1200, 1202 (Pa. Super. 2011) (citations omitted).

> Since the purpose of the information is to apprise the defendant of the charges against him so that he may have a fair opportunity to prepare a defense, our Supreme Court has stated that following an amendment, relief is warranted only when the variance between the original and the new charges prejudices [a defendant] by, for example, rendering defenses which might have been raised against the original charges ineffective with respect to the substituted charges.

***Sinclair***, 897 A.2d at 1223 (citation omitted).

In determining whether a defendant suffered prejudice, we consider the following factors:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire

- 15 -

factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Mentzer***, 18 A.3d at 1203 (citation omitted).

Here, the Commonwealth filed a motion to amend on June 6, 2024, seeking to amend the criminal information to reflect an incident date of "between . . . August 22, 2022 and November 16, 2022" rather than simply "November 16, 2022." ***See*** Commonwealth's Mot. to Amend, 6/6/24. The Commonwealth did not seek to add any additional charges to the information. ***Id.*** The trial court addressed the motion on the morning of trial. ***See*** N.T., 6/10/24, at 4-8. Appellant argued that the original criminal information stated the crimes occurred "on or around November 16th of 2022." ***Id.*** at 5-6. Appellant claimed the amendment would change the period of time for which he was prepared to defend and voiced concerns about being able to present a protection from abuse order that allegedly prevented Appellant from entering the house where the dogs were kept as well as alibi witnesses who would testify that Appellant had previously moved out of the house. ***Id.*** at 6-8. The trial court responded to Appellant's argument by stating:

> "[Y]ou had to know that this doesn't occur on one day. It is pretty clear. And I don't know what your discovery says or what witnesses will testify to, but just in reading [the affidavit of probable cause and the criminal information], it says they were left uncared for. If a dog doesn't get care on one day, it doesn't die, it's not covered in fecal matter."

- 16 -

*Id*. at 7.  Appellant advised the court that he would like to call alibi witnesses who could testify that he moved out of the home at the end of August 2022. *Id.* at 8.  The trial court stated that it was only fair for Appellant to present the testimony of those witnesses and granted the motion to amend.  *Id.*

After our review of the record, we discern no abuse of discretion by the trial court in granting the Commonwealth's motion to amend the information. *See Small*, 741 A.2d at 681.  The amendment did not add any additional charges, criminal events, or criminal conduct to the information.  The amendment to the information merely clarified the timeline of events.  Since the amendment to the information did not change the basic elements of the crimes charged and did not add charges arising out of a different factual situation from the original information, defendant was on notice about the criminal conduct the Commonwealth alleged he engaged in.  *See Mentzer*, 18 A.3d at 1202.

Furthermore, the record does not reflect that the amendment required Appellant to change his defense strategy.  The two concerns Appellant raised about the Commonwealth's amendment to the information were that he would need to call alibi witnesses going back to August 2022 and that he would not be able to present evidence of a protection from abuse order.  *See* N.T., 6/10/24, at 6-8.  However, Appellant presented testimony supporting both arguments at trial.  *See id.* at 7, 104, 116-17, 122-23, 127, 137-40, 143-45, 148-54.  Therefore, the amendment to the information did not change Appellant's defense strategy.  *See Mentzer*, 18 A.3d at 1203.  For the reasons

stated above, Appellant could not have been prejudiced by the amendment to the information. *See Sinclair*, 897 A.2d at 1223. Accordingly, Appellant is not entitled to relief on this claim, and we agree with Counsel's assessment that this claim is frivolous.

## Mooted Issues

Counsel also identifies two preserved issues that were ultimately mooted because defendant was not convicted of the related charges. Counsel explains that:

> [T]he [trial] court denied an objection to Ms. Mansell's testimony regarding [the two puppies'] dehydration symptoms. However, the jury did not convict [Appellant] of any charges related to [the two puppies]. Finally, the [trial] court denied [Appellant's] motion for acquittal relative to the felony count for causing Tiny's death. But again, the jury did not convict [Appellant] of this felony charge.

*Anders*/*Santiago* Brief at 15 (some formatting altered).

"An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Commonwealth v. Bricker*, 41 A.3d 872, 881 (Pa. Super. 2012) (*quoting Rivera v. Pennsylvania Department of Corrections*, 837 A.2d 525, 527 (Pa. Super. 2003)).

After our independent review of the record, we agree with Counsel's determination. Appellant was not convicted of any charges related to the two puppies and was acquitted of the felony count for causing Tiny's death. *See* N.T., 6/10/24, at 201-02. Since Appellant was acquitted of the underlying

charges for each of these challenges, any appeal issues regarding these charges are moot. **See generally Bricker**, 41 A.3d at 881 (holding Appellant's claim that the trial court erred by permitting the Commonwealth's amendment of the information was moot where the trial court later dismissed the amended counts for lack of evidence). Accordingly, we agree with Counsel's determination that these issues would be meritless on appeal.

Finally, our independent review of the record does not reveal any additional, non-frivolous issues on direct appeal. **See Flowers**, 113 A.3d at1250; **see also Goodwin**, 928 A.2d at 291. For these reasons, we grant Counsel's petition to withdraw, and we affirm the judgment of sentence.

Judgment of sentence affirmed. Counsel's petition to withdraw granted. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 06/17/2025